## HICKS v. HICKS et al.—176 S. W. (2d) 371.

Middle Section.   March 13, 1943.

Petition for Certiorari Denied by Supreme Court, July 3, 1943.

Rehearing Denied by Supreme Court, December 4, 1943.

644

John H. Lechleiter, of Nashville, for plaintiff in error.

Norman & Keefe, of Nashville, for defendant in error.

FELTS, J.  This is a petition to modify a decree which was entered in this cause March 28, 1938, and which divorced Mr. and Mrs. Hicks and gave her custody of their four-year-old daughter, Regina Ann.  The child has been in the care of her maternal grandmother, Mrs. Eula Pickle, since before the divorce.  The petition brought in Mrs. Pickle as a defendant, and prayed that the former decree be so modified as to give petitioner, the father, custody of the child.

The petition was heard before the Honorable E. F. Langford, the same judge who had entered the original decree.  He regarded that decree as conclusive against the father unless there had since been a change of circumstances which required a change of the custody; and, finding no such change, he dismissed the petition.  Petitioner appealed in error and has assigned errors.

These are the material facts: Petitioner, George W. Hicks, and his wife, Ruby Lee Hicks, were living together in Nashville; and he was working for the Neuhoff Packing Company.  On May 31, 1937, he left his job, went to Detroit, and left his wife and child at the home of the

wife's mother, Mrs. Pickle. The child has lived there ever since; and the wife lived there until shortly before the petition was filed October 20, 1941. From September 1937 to March 1938, he sent Mrs. Pickle $3 per week for the child's support. He remained in Detroit until June 1938.

In the meantime, on December 24, 1937, he filed the original bill in this cause for a divorce upon the ground of cruel and inhuman treatment and for the custody of the child upon the ground that she was not in proper custody. He alleged that she "is now and has been at all times in the custody of the defendant and her mother, Mrs. Pickle" and that his wife had often taken their four-year-old daughter to beer gardens and other places where intoxicating liquors were sold and had otherwise failed properly to look after and care for the child. The wife's answer denied these charges and stated that "she is now ready and willing to take complainant back and live with him whenever he is willing to take and provide for her and their child."

The divorce suit was heard March 28, 1938, upon the bill and oral evidence, the wife having withdrawn her answer "by consent." The court entered a decree divorcing the parties, giving the mother custody of the child, requiring the father to pay $5 weekly for the support of the child, and retaining the cause in court for enforcement of the decree and "any further proceedings necessary to the interests of the parties." It was a consent decree in so far as it left the child with the mother and grandmother. Though he had asked for the custody he really did not want it because, he says, he was compelled to return to his work in Detroit, and agreed to the decree, knowing the child was living with her grandmother

but not knowing "whether her grandmother or who was going to take care of the child."

Prior to leaving his wife and child in May 1937, while working at Neuhoff's, he knew Miss Lillian Broyles, an employee at Neuhoff's. Soon after he went to Detroit she, with her family, also went there; and "a couple of months" after his divorce he married her, they returned to Nashville, and he went back to his job at Neuhoff's. They have a two-year-old son, and live in a house on the Hydes Ferry Pike near Nashville, one of his adult sisters living in his home. He now works for Vultee for $30 per week.

His former wife, Ruby Lee Hicks, some two or three weeks before the petition was filed, married Clark Smith, who has a position with T.V.A. which requires him to go from one place to another in that area. He had been transferred from Chattanooga to North Carolina and he and his wife were there when the petition was filed. Mrs. Pickle wired her and she came to Nashville on the return day of the petition but was not present in court some weeks later on the successive Saturdays when this proceeding was heard. She, however, has not permanently removed from Nashville, but is in North Carolina with her husband only while his duties require him to be there. She has not taken the child out of Tennessee but has agreed for her to remain in the home of her grandmother, Mrs. Pickle.

Mrs. Pickle, a widow, lives at 242 Truetland Street, Nashville, and has lived for more than twenty years in that immediate neighborhood. It is near a church, a school, and a park. Her house has nine rooms downstairs and five upstairs. She has roomers and boarders downstairs; and the upstairs is occupied by her, three of

her children, and her grandchild, Regina Ann. These three children are an adult daughter; a daughter, sixteen; and a son, fifteen. Mrs. Pickle and her family live on what she gets from her roomers and boarders and what her children earn. With her own means, supplemented by the $5 per week paid by petitioner, she has been supporting and caring for the child, sending her to school and church, and rearing her in a proper manner. At the time of the hearing she was eight, very intelligent, in the third grade in school—a grade ahead of her age. Before 1937, while her father and mother were living together, from the time she was a baby a few months old, they used to leave her with Mrs. Pickle much of the time; Mrs. Pickle has practically reared her from an infant, having kept her much of the time till she was four and all the time since then. This grandmother, who has thus mothered this child, is deeply devoted to her; and the child has great affection for the grandmother.

The argument for petitioner goes upon the idea that his right was unaffected by the former decree and that, other considerations being equal, he as the father has a superior right to the custody of his child. We think, however, that the decree was an adjudication against his right, and consequently a bar of it, upon the facts then existing; and that, in the absence of proof that there has since been a change of circumstances which requires a change of custody for the welfare of the child, the decree is still conclusive against him. The principle of res adjudicata applies with as much force to final decrees disposing of the custody of children as it does to decrees of any other character. 2 Freeman on Judgments (5th Ed.), sec. 829, says:

"Final determinations with respect to the care and custody of infants form no exception to the general principle of conclusiveness of judgments. If the adjudication was by a court having jurisdiction it is res judicata as to the rights of the parties on the facts as they then existed. This rule is most frequently applied with respect to habeas corpus proceedings to determine the rights of custody, which must be distinguished in this respect from habeas corpus proceedings by one imprisoned, to secure his freedom, the question in the former being not whether the infant is restrained of its liberty but which of the contending parties is entitled to its custody. The decision on a former writ is conclusive in a subsequent application, unless some new fact has occurred which has altered the state of the case or the relative claims of the parents or other contestants to the custody of the child in some material respect. The adjudication is conclusive, so far as the right of custody is concerned, as to every matter or fact which might have been urged for or against that right. . . ."

And the author goes on to say that, "to secure the repose of society," the application of the principle of res adjudicata is necessary in all judicial proceedings and no less so in the oft-recurring and "unhappy controversies" over the custody of children; and that it is applied alike in habeas corpus and in divorce cases (Id., sec. 829), citing, among other authorities, State ex rel. v. West, 139 Tenn. 522, 201 S. W. 743, Ann. Cas. 1918D, 749, which was a habeas corpus case, and Kenner v. Kenner, 139 Tenn. 211, 700, 201 S. W. 779, 202 S. W. 723, L. R. A. 1918E, 587, which was a divorce case.

In State ex rel. v. West, supra, the juvenile court awarded to a woman, formerly a nurse, the custody of a

boy. His father brought a habeas corpus proceeding in the circuit court to obtain his custody. It was held that the juvenile court judgment was a bar to the habeas corpus proceeding, the issue—what was for the best interest of the child—and the facts being the same in both proceedings. Said the court through Mr. Justice (now Chief Justice) Green:

"It is said that the best test as to whether a former judgment is a bar in subsequent proceedings is to consider whether the same evidence would sustain both. If so, then the judgment in the former suit is res adjudicata, although the two actions are different. 15 R. C. L., p. 964." 139 Tenn. 529, 201 S. W. 745, Ann. Cas. 1918D, 749.

In Kenner v. Kenner, supra, the wife, after separating from her husband in Tennessee, went to Alabama to live, taking their child. There she obtained a decree of divorce and the custody of the child, publication having been made and a copy of the bill sent to the husband. Later, when she brought the child back to Tennessee on a visit, he filed a bill seeking the custody of his child. The court, however, held that the Alabama decree awarding the custody to the wife was res adjudicata and a bar to his suit, in the absence of a showing that there had been a change of circumstances making a change of custody essential to the best interests of the child. 139 Tenn. 223, 224, 201 S. W. 779, L. R. A. 1918E, 587.

When a question or issue has been determined, the attempt to relitigate it is usually in a subsequent independent action or suit, as in the West and Kenner cases; but it may be at a later stage of the same action or suit, as in the present case. "The effect of an adjudication as res adjudicata is not confined in its operation to subsequent independent actions or proceedings, but is equally

applicable to all ancillary or collateral proceedings in the same suit, action, or general proceeding." 2 Freeman on Judgments (5th Ed.), sec. 627a. See also, Jordan v. Johns, 168 Tenn. 525, 79 S. W. (2d) 798. So when an issue has been finally determined, the principle of res adjudicata prevents a relitigation of that issue whether in the same or in an independent suit.

█ █ It is true the doctrine of res adjudicata applies only to final judgments or decrees. But we think the former decree in the case before us was a final decree within the meaning of this doctrine. It was final in the sense that it left no issue undetermined, decided all matters, disposed of the whole merits of the case, and determined the custody of the child upon the facts then existing. It was also final in the sense that, not being on its face a consent decree, it was appealable as a matter of right and subject to be reversed or set aside only in one of the modes provided for appellate review of final judgments and decrees. And it was final in the same manner and to the same extent as the decrees which were held to be res adjudicata in the West and Kenner cases, supra.

But the decrees in those cases were not final in the sense that they precluded a later decree upon new facts or changed conditions making a change of custody necessary for the welfare of the child. In the Kenner case it was said that the power to make such a change remained in the court that had decreed the divorce and custody, "such power being held essentially in reserve by all courts in such cases." 139 Tenn. 222-224, 201 S. W. 782, L. R. A. 1918E, 587. See also, 27 C. J. S., Divorce, sec. 317.

█ That decision was before the enactment of 1932 Code section 8454, by which decrees for support and

custody remain in the control of the court and are "subject to such changes or modification as the exigencies of the case may require." That section seems merely declaratory of pre-existing law, so far as decrees for custody are concerned. That section and the provision of section 8446, retaining within the court's control decrees for support or maintenance and empowering the court, on application of either party, to "decree an increase or decrease of such allowance on cause being shown," were enacted, it would seem, primarily to remove the difficulty that had been encountered with respect to future installments of alimony in cases where a divorce a vinculo had been granted. Such a decree was final, passed beyond the court's control after thirty days, and could thereafter neither be modified nor enforced by process of contempt. Going v. Going, 144 Tenn. 303, 232 S. W. 443; Going v. Going, 148 Tenn. 522, 256 S. W. 890, 31 A. L. R. 633. The effect of these sections is to retain all decrees for custody and support within the control of the court to enable it to make such changes or modification of them as the exigencies of the case may require. Rose Funeral Home, Inc., v. Julian, 176 Tenn. 534, 144 S. W. (2d) 755, 131 A. L. R. 858; Davenport v. Davenport, 178 Tenn. 517, 160 S. W. (2d) 406.

But we do not think these statutes deprive such decrees of their quality of finality as adjudications. They are final for the purpose of execution or appeal; and we think they are final as res adjudicata upon the facts then existing. If such a decree should be regarded merely as an interlocutory order, without any force or effect as an adjudication, and if either party, as often as he chose, could relitigate the question of custody or support upon the same evidence and the same facts, great would

be the inconvenience to the litigants, the courts, and the public; and any trial of the issues would be but an idle ceremony, since it would settle nothing.

As stated, these statutes retain such a decree within the control of the court to enable it to make "such changes or modification as the emergencies of the case may require." We think an emergency here must be held to mean facts and conditions which have emerged since the decree, new facts and changed conditions which were not determined and could not be anticipated by the decree; and that the decree is final and conclusive upon all the facts and conditions which existed and upon which the decree was made.

It is true the respondents did not plead res adjudicata as a defense to the petition. In fact they do not appear to have filed any written plea or answer, their counsel merely stating their defenses orally to the court. No point, however, was made below or here upon this matter. The general rule is that in suits in equity res adjudicata or estoppel by judgment must be specially pleaded (Boone v. Citizens' Bank & Trust Co., 154 Tenn. 241, 290 S. W. 39, 50 A. L. R. 1369; Annotation, 120 A. L. R. 8), except where it appears upon the face of the bill or petition, as it did in the present case. 34 C. J. 1055, 1056, 1058; Crum v. Fillers, 6 Tenn. App. 547. In such a case as this we think it was proper for the trial judge to apply the principle of res adjudicata. Douglas v. Douglas, 156 Tenn. 655, 4 S. W. (2d) 358.

So we think the trial judge rightly regarded the former decree in this case as conclusive against petitioner upon the circumstances which then existed. And we concur in his conclusion that petitioner proved no emergency, no new facts or conditions which, for the welfare of the

child, required a modification of the decree or a change of her custody. Practically all the evidence related to matters which existed when the former decree was entered. Some evidence was offered in an effort to show that both the mother and the grandmother of the child were unfit to have her custody; but all of such evidence referred to matters which had occurred before the decree was entered and petitioner consented to the awarding of the custody nominally to the mother. but actually to the grandmother. We think in the first place that such matters did not show that the grandmother or the mother was unfit, and in the second they were res adjudicata under the former decree, and in the third place the petitioner should not now be heard to complain of them. For this reason we deem it unnecessary to detail them here.

The conditions and surroundings under which the child was being reared by her grandmother at the time of the hearing were in every material respect the same as when the decree was entered. The only change in the circumstances of the parties since that decree is that petitioner has married his present wife, returned to Nashville, established a home here, and taken upon himself the obligation of rearing another family; and the child's mother has remarried and is now with her present husband temporarily in North Carolina. But these are not matters which so materially affect the welfare of the child as to require a change of her custody. The fact that the mother has remarried and is sojourning in another state is no ground for a change of custody. Hersey v. Hersey, 271 Mass. 545, 171 N. E. 815, 70 A. L. R. 518. The fact that the grandmother has kept and reared the child almost from infancy entitles her to some consideration, and, what is more important, makes it against the

interest of the child now to disturb the quasi-parental and filial relations which have grown up between her and her grandmother (39 Am. Jur. 620, 621), especially since the child, in response to questions from the court, expressed her preference to stay with her grandmother rather than to go to live with her father.

To support his contention that, other considerations being equal, he as the father has a superior right to the custody of his child, petitioner relies on Stubblefield v. State ex rel. Fjelstad, 171 Tenn. 580, 106 S. W. (2d) 558. We think this case is inapposite. On the facts the Court found that it was to the advantage and for the welfare of the child that her custody be awarded to her father, rather than to her "aged greatgrandfather" and her "crusty" old great-uncle. There had been no decree of the custody to either of them and there was therefore no question of res adjudicata in the case. The mother deserted her husband and brought their child to Memphis to live with her grandfather and her uncle in their apartment over a grocery store. She went to Arkansas, got a decree of divorce and custody of the child; but this was kept secret from her husband. She and the child continued to live with her grandfather and uncle until she died two years later. Then the father brought a habeas corpus proceedceeding to obtain the custody of his child. On all the facts both the trial court and the Supreme Court found that the welfare of the child required that her custody be decreed to her father. It is usually held that the effect of a decree of the custody of a child to a mother, which bars the right of the father, expires with her death and revives his right, provided he is a suitable person to have the custody. Annotation, 128 A. L. R. 989. So there was, and could be, no question of res adjudicata in that

case. It merely applied the rule, followed in this state ever since State v. Paine, 23 Tenn. (4 Humph.), 523, that the welfare of the child is paramount, while at the same time emphasizing that, other considerations being equal, a parent's right to the custody of his child is superior to that of other persons.

■ Criticism is made of the manner in which the trial judge conducted the hearing. He undertook to confine the evidence solely to the question of the welfare of the child and the question whether there had been any material change in the circumstances since the decree which made it to the interest of the child to modify the decree and change the custody. We think this was proper. "Ordinarily, the inquiry is limited to matters arising since the entry of the divorce decree, and evidence as to facts, circumstances, or conduct antedating the divorce is properly excluded and should not be considered." 27 C. J. S., Divorce, sec. 317, pp. 1196-1197.

■ Complaint is made that as soon as petitioner testified the court called the grandmother and questioned her, to enable him, he said, to get a picture of both sides as the case was presented. After this petitioner was allowed to develop his side of the case. While this action of the court was a variance from the usual order, it was a matter largely in his discretion, and we cannot see how it resulted in any prejudice to the petitioner.

■ ■ Petitioner also complains that on one of the successive Saturdays while the case was being heard the trial judge talked to the child privately in his chambers. When exception was made to this, the court called her to the stand, interrogated her as to her wishes, and counsel for petitioner cross-examined her. It is of course true, as counsel insists, that the rights of no person can be

determined by evidence procured by a judge through his own secret and private inquiries. Caldwell v. State, 164 Tenn. 325, 356, 48 S. W. (2d) 1087, 1097. But a contest for the custody of a child who is not a party, is not, strictly speaking, a trial of the rights of the parties. It is primarily an inquiry into what is for the welfare of the child, regardless of the rights of the parties. The trial judge was bound to decide the contest on what was for the best interest of the child, regardless of the rights of the parties, or the wishes of the child. But if he thought her wishes could aid him, it was within his discretion to ascertain those wishes, either by talking to her privately or by calling her as a witness. 30 Am. Jur., sec. 21, pp. 609, 610; Sheehy v. Sheehy, 88 N. H. 223, 186 A. 1, 107 A. L. R. 635, 640. Consideration for a child, the victim of such an unhappy controversy, would suggest that it be saved the embarrassment of an examination in the hearing of its parents (Krieger v. Krieger, 59 Idaho 301, 81 P. (2d) 1081); and this was doubtless what prompted the trial judge to talk to the child privately. At any rate, upon counsel's objection to this, the child was called to the stand, examined, and cross-examined; and we cannot see that any prejudice resulted to petitioner.

Finally, petitioner complains that the trial judge limited the former decree so as to permit petitioner to visit and see the child only in the home of her grandmother. The decree had accorded the father the right to see the child "at any and all reasonable times"; and for a year or more she had been spending weekends in his home. But, preparatory to bringing this proceeding, petitioner had the child taken to the office of his counsel, who talked with her. This upset the child and this proceeding, as such controversies usually do, stirred up ill

feeling. It was in view of these matters that the trial judge limited the former decree so as to allow the father to see the child only at the grandmother's home, it being stated in open court by counsel for the grandmother that petitioner was welcome to come there to see the child.

We think this change of the decree was a matter within the discretion of the trial judge, who saw the parties and the situation much better than this Court can see them. He, however, has the power to make such further changes in the decree with respect to the right of the father to be with the child, as may be proper under the circumstances; and he doubtless would again allow the child to go to the home of her father on weekends, upon a showing that it would not be harmful for her to do so.

All of the assignments of error are overruled, the decree of the circuit court is affirmed, and the costs of the appeal are adjudged against petitioner, George W. Hicks. The cause will be remanded to the circuit court to the end that that court may retain jurisdiction to deal with the case in the future as the exigencies may require.

Howell and Hickerson, JJ., concur.