LEON TYREE TERRY, Appellee, v. OMATINE DOW-
LAND TERRY, Appellant.—361 S. W. (2d) 500.

Western Section. November 30, 1960.

Certiorari Denied by Supreme Court March 10, 1961.

Hughie Ragan, Jackson, for appellant.

Brooks McLemore, G. L. Morrison, Jackson, for
appellee.

CARNEY, J. On September 18, 1959, the Chancellor awarded a divorce to the complainant husband, Leon Tyree Terry, on the grounds of cruel and inhuman treatment; the cross-bill of the wife, Mrs. Omatine Dowland Terry, was dismissed; Mrs. Terry was awarded exclusive custody of their daughter, Diane Terry, aged 11, and the custody of the son, Scotty Leon Terry, aged 5, was divided between the father and mother.

Scotty was left with his mother during the school week and Mr. Terry was given the right to have the custody of the child each week end from 6:00 P.M. on Friday through 6:00 P.M. on Sunday. In addition the Chancellor's decree provided that Mr. Terry should have full custody of the boy during the summer months beginning ten days after school was out and ending ten days before the fall term of school.

The home and furniture were held as tenants by the entireties and upon the divorce Mr. and Mrs. Terry became tenants in common. However, the Chancellor's decree of September 18, 1959, gave Mrs. Terry the full right to occupy the home and furniture for the benefit of herself and the children until the further orders of the court and each party was required to pay one-half of the taxes and insurance, and each party was enjoined from disposing of his interest in said home and furniture pending further orders by the Chancellor. Each parent was given visitation rights when the children were in the custody of the other parent. No appeal from this decree of September 18 was taken by either party.

The incompatibility which was shown to exist so strongly on the hearing before the Chancellor continued to exist between the parties after the divorce, particu-

larly when Mr. Terry was at Mrs. Terry's home visiting the children or taking the boy Scotty to or from the home. Mr. Terry is a brick mason earning from $4,000 to $6,000 a year and was ordered to pay $150.00 per month to his former wife, the defendant, for the support of his two children.

On January 9, 1960, Mr. Terry filed a petition seeking a reduction in the amount of his monthly support payments. On January 30, 1960, he amended his supplemental petition seeking full custody of the minor child, Scotty Terry, and a reduction in the amount of monthly support for his daughter, Diane; also seeking a division of the furniture and personal property and a sale for division of the residence. The proof shows that after the filing of the petition for reduction of support on January 9, 1960, Mrs. Terry had Mr. Terry arrested on the charges of disorderly conduct alleged to have occurred on the occasion of one of his visits to her home. Shortly after his arrest the complainant filed the supplemental petition seeking a complete separation of the children. Mr. Terry did not ask for custody of the daugther, Diane, in the court below and does not seek such custody in this court.

A second trial was completed before the Chancellor on February 16, 1960, taken under advisement by the Chancellor and decree rendered on March 19, 1960. By his decree upon the second trial the Chancellor modified his former decree so as to give Mr. Terry full custody of the little boy, Scotty; full custody of the daughter, Diane, was left with the defendant, Mrs. Terry; the amount of monthly payments by Mr. Terry was reduced from $150.00 to $100.00 per month; the furniture was

divided between the parties in kind and the injunction against either party disposing of his or her interest in the real estate was dissolved with permission of either party to apply for a sale of the residence for division.

It is from the second trial that Mrs. Terry has brought her appeal to this court and assigned errors.

This court has before it all of the evidence heard by the Chancellor on both trials containing some 700 pages. Both trials were upon oral testimony and of course the Chancellor both heard and observed the many witnesses who testified in behalf of each party.

The parties are each about 40 years old; were married in 1946 in Bradford, Tennessee, and have lived in Jackson, Tennessee, for several years. Mr. Terry is an active member of a Baptist Church in Jackson and Mrs. Terry is an active member of the Church of Christ in Jackson, Tennessee. This difference in religious affiliation seems to have contributed very substantially to their incompatibility. While each parent took the children with them to their respective churches from time to time yet this arrangement appears not to have been satisfactory to either parent.

In 1958 the complainant, Mr. Terry, was severely injured in an automobile collision. Among his injuries was a severe blow on the head. The complainant became nervous and the incompatibility between him and his wife seems to have been greatly increased after the automobile collision. Mrs. Terry formed the opinion that Mr. Terry was insane and discussed the matter with their friends and neighbors and particularly the complainant's relatives.

The complainant and his solicitor were both concerned as to whether or not the complainant had any permanent injury to his head as a result of the accident and it was decided that he should consult, among others, a specialist at the Veterans Hospital in Memphis, Tennessee. He was scheduled to go to Memphis on March 24, 1959, for the examination.

On March 23, 1959, the defendant, Mrs. Terry, swore out a lunacy warrant in Jackson, Tennessee, against Mr. Terry and he was confined in the Madison County jail for a short period of time before being released to a friend. On March 24, 1959, the complainant did go to Memphis and consult some doctors at the Veterans Hospital. Mrs. Terry along with her brother and two sisters appeared at the Veterans Hospital and even though the examining physician at the Veterans Hospital told the complainant in defendant's presence that he had no permanent injury and it was not necessary that he remain in the hospital Mrs. Terry was insistent that he was mentally ill and that he should stay in the hospital for a series of treatments. The defendant's brother-in-law, apparently with the consent of the defendant, was also insistent that the complainant stay in the hospital and threatened him with a divorce procedure by the defendant if he did not remain.

The complainant acted upon the advice of the physician and returned to Jackson, Tennessee. When he returned home his wife and children were not at home and in a short time three deputy sheriffs arrested him on another lunacy warrant sworn out by the defendant, Mrs. Terry, and again the complainant was taken to jail. The following day an extended sanity hearing was held in Jackson,

Tennessee, at which a number of witnesses appeared and testified. The complainant, Mr. Terry, was declared to be of sound mind and again released. After the sanity hearing Mrs. Terry returned to their home and the complainant went back home and they lived together for a short while.

The testimony of the parties is most contradictory as to their relationship during this period. The complainant testified that his wife followed a studied course of abuse, threats and harassment telling the complainant that she hoped that both he and his mother would be dead by daylight; that she refused to cook or wash for him and harangued him both day and night and that finally the complainant in desperation had to leave his home and get at room at the Y.M.C.A.

On the other hand Mrs. Terry testified that she had not mistreated the complainant in any manner but that she had done all that she could to make their marriage a success; that the complainant flew into violent rages of temper when he was cross; that after the sanity hearing he refused to sleep in a bed but slept on the divan and then said he was going to build a cage in the garage where he would live and that he actually bought some lumber which she thought was preparatory to carrying out his threat. Mrs. Terry insisted that she had never mistreated the complainant and had only sworn out the lunacy papers because she thoroughly believed that his mind was impaired and that she thought he needed mental treatment. Her cross bill for divorce also alleged that her husband regularly cursed her and called her vulgar and vile names even in the presence of the chil-

dren and more than one occasion in a fit of temper had threatened the cross complainant with physical violence.

It would unduly prolong this opinion to discuss at length all of the testimony presented before the Chancellor on the two trials. The testimony of the complainant and his witnesses corroborated the allegations of his original bill and the testimony of the defendant wife and her witnesses corroborated the allegations of her answer and cross bill. Suffice it to say His Honor the Chancellor having heard the entire testimony found the issues in favor of the complainant and against the defendant; awarded a divorce to Mr. Terry on the grounds of cruel and inhuman treatment and dismissed the cross bill of the defendant wife. No appeal having been taken these findings and decree of the Chancellor have become final. The only questions before this court on this appeal are the actions of the Chancellor in modifying his former decree as to the custody of the little boy, Scotty Terry, and his decree concerning the support of both children.

■ Upon the second trial the complainant testified that the relationship between him and his former wife had not improved; that the defendant was in effect poisoning the mind of the children against him; that the defendant told him that if he even tried to talk to the children when they were on the street that she would have him arrested; that when he went to the defendant's on Christmas to give his little girl a Christmas present he was not permitted to see her and that it was not until up in January that they permitted him to give her the Christmas present in person; that on one occasion the little boy told him, "Daddy, mama says you are not going to give us any more food to eat."

Further proof was that on January 15, 1960, when the complainant went to the defendant's home to pick up the little boy for the week end some controversy arose and the defendant had the complainant arrested on charges of disorderly conduct which were dismissed by the city judge of Jackson, Tennessee. On the other hand the defendant and her witnesses testified that it was the complainant who caused all the controversy and all the trouble and that every time he came for the children he made a scene, sometimes by banging and beating on the door and talking loud and exciting the children.

From the Chancellor's memorandum after the second hearing we quote as follows:

"The record discloses a bitter battle between the parties; charges by each of the parties against the other and proof that convinces the Court that there is no hope for any courteous, considerate or reasonable communication or other relationship between the parties even in Matters involving the custody of their children; (and the Court fully realizes that both parents love their said children). The Court is further of the opinion that the feelings of distrust or dislike, probably hatred has extended to the near kin of each of the parties to such an extent, that there is no one of them to whom the Court could turn for any assistance for a reasonable plan for custody and visitation for the benefit of the two minor children of the parties.

"The Court has heretofore granted the complainant an absolute divorce and fixed the custody and support of the children, etc. by decree dated September 18, 1959, to which reference is hereby made. In

said decree custody of the infant daughter, Diane Sharee Terry, was given the defendant, Mrs. Omatine Terry, with visitation right to the father. Said custody will remain as decreed. At that time it appeared to the Court that such visitation rights probably could not be enjoyed with any harmony because of the feeling between the daughter and her father and while we can see no sound basis for the feeling, the Court will advise the Complainant that it is best that he do not insist on seeing or visiting said child except as it is pleasing to her.

"The custody of the minor son, Scotty Leon Terry, will be changed and given to the Complainant with the provision that he visit with his Mother at her home in Jackson two Friday nights and Saturdays each month and three weeks (three one week visits) during the summer vacation.

"(The Solicitors for the parties will submit a detailed plan for making these visits (and dates) with the least friction.

"The Court finds that this arrangement is for the best interest of the minors and is as fair and considerate for the parents as is possible at this time under the circumstances."

Solicitor for appellant insists that His Honor the Chancellor was in error in changing the custody of the minor child, Scotty Terry, from his mother to the father for two reasons: (1) It is to the best interest of the minor that he remain in the custody of his mother, and (2) that the complainant had not proved such a change in conditions as would warrant modification of the decree of date September 18, 1959. The solicitor for appellant

relies principally upon the case of Hicks v. Hicks, 26 Tenn. App. 641, 176 S. W. (2d) 371. In our opinion Hicks v. Hicks is not controlling and neither of these grounds are sufficient to reverse the action of the Chancellor.

In the first place we think the proof does show a sufficient change in conditions to justify a modification of the former decree. We concur in the finding of the Chancellor that there is no hope for any courteous, considerate or reasonable communication between these parties even in matters involving the division of custody and visitation of their children. The Chancellor found upon the former hearing that the daughter, Diane Terry, had been unfairly prejudiced against her father and that there had been loose talk in her presence about her father being crazy and about his being cruel to her mother. The Chancellor suggested that the complainant father make no effort to have the child visit him until her attitude toward him had changed.

While as a general rule it is not good to separate two small children yet it is also true that it is not good for the children to witness a fuss or controversy each time their father appears at their home to visit with them.

The Chancellor found and we concur in his finding that both parents are fit morally to have the custody of either of the children. The proof shows that Mr. Terry's father and mother have moved to Jackson, Tennessee, and that Mr. Terry's mother is able and willing to assist him in the custody of the minor child, Scotty. Mrs. Terry has no income and will be forced to get a job and/or rely upon the help of her family in maintaining herself. It is contemplated that some of her sisters will assist her

in looking after the daughter, Diane. From all the proof we concur in the finding of the Chancellor that it is for the best interest of the minor child, Scotty, that his custody be changed from the mother to the father.

In the second place the Chancellor's decree after the first hearing expressly indicated that the decree concerning the care and custody of the minor children was not intended to be final but only temporary and therefore said award of custody was not res adjudicata. See Holloway v. Bradley, 190 Tenn. 565, 230 S. W. (2d) 1003, in which the case of Hicks v. Hicks, supra, relied upon by appellant is expressly differentiated. We quote from Judge Gailor's opinion as follows: "The determining facts in these adoption and custody cases are so infinite in their variety that the reported decision in one case is of little aid or assistance in settling the next. The supreme rule to which all others should yield is the welfare and best interest of the child."

■ Since we have concurred in the action of the Chancellor in dividing the custody of the two children, we think it only proper to reduce the amount of monthly payments to be paid by the father for child support. The Chancellor allowed $150.00 per month for the support of both the children and reduced this amount to $100.00 on the second decree when the custody of the boy was taken from the mother and given to the father.

Bearing in mind that the divorce decree was awarded to the husband and that the wife is not entitled to any support for herself, it appears that the $100.00 per month allowed by the Chancellor for the support of the daughter is probably high. However, the husband has not assigned error to this action of the Chancellor and has

raised no question concerning the same upon the argument. Therefore, this ruling by the Chancellor will not be disturbed on this appeal.

The decree of the Chancellor dividing the furniture one-half to each and giving leave to either party to apply for a sale of the house and lot for division is affirmed.

All assignments of error having been respectfully overruled, a decree will be entered in this cause affirming the decree of the Chancellor and remanding the cause for further proceedings consistent herewith. The costs of this appeal will be taxed against the appellant, Mrs. Terry.

Avery, P. J. (W. S.), and Bejach, J., concur.