**Debbie Sue Hudson LUNDY, Plaintiff-Appellee,**

v.

**Taze Ray LUNDY, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 30, 1986.

Application for Permission to Appeal Certiorari Denied by Supreme Court Oct. 27, 1986.

Patrick J. McHale, Murfreesboro, for plaintiff-appellee.

Frank M. Fly, Murfreesboro, for defendant-appellant.

## OPINION

TODD, Presiding Judge, Middle Section.

The defendant, Taze Ray Lundy, has appealed from a post divorce decree judgment requiring him to support the minor child of the parties.

There is no transcript or statement of the evidence. The technical record shows the following:

On October 6, 1982, under case no. 17560, plaintiff filed this suit for divorce, exhibiting a pre-marriage contract and praying for custody of and support for the minor child of the parties.

On March 28, 1983, an order of default was entered, reciting service of process upon defendant and his failure to file a timely answer.

On the same date, March 28, 1983, a final decree was entered awarding to plaintiff an absolute divorce and custody of the minor child and ordering defendant to pay one-half of the medical expense of the birth and treatment of the child and $50.00 per week child support.

On June 13, 1983, plaintiff filed a petition for judgment for arrears child support and for contempt.

On October 20, 1983, defendant filed an "Answer, Motion and Affidavit" containing a detailed recitation of the relations and certain agreements between the parties. The pleading requested relief from the judgment pursuant to TRCP Rule 60.02(2).

On October 27, 1983, under case no. 18711, defendant filed a separate suit against plaintiff alleging an agreement by plaintiff to assume and pay all expenses of birth and support of the child and praying for judgment against plaintiff for an unstated amount.

On November 8, 1983, an agreed order was entered consolidating case no. 17560 with case no. 18711.

On November 14, 1983, an order was entered requiring defendant to pay $50.00 per week to the Clerk of the Trial Court.

On December 13, 1983, the parties filed a brief stipulation of fact.

On October 29, 1985, an order was entered containing the following:

This cause came on to be heard on the 20th day of May, 1985, upon the pleadings, briefs, motions, depositions filed with the Court and the entire record in this cause, and further upon the arguments of counsel, whereupon the Court made the following comments from the Bench:

The Court first noted that all pleadings, briefs, depositions and the entire amount of materials filed in this matter were deemed to have been placed in the record so as to insure that any Appellate Courts addressing this cause would have a complete record.

. . . .

Concerning the matters raised by the pleadings in Case No. 18711, ultimately consolidated with Case No. 17560, it was the feeling of the Court that relative to the argument of restitution made by the original Defendant, Plaintiff in Case No. 18711, TAZE RAY LUNDY, under the circumstances of this case it would be

"folly" to hold for the Defendant on a restitution theory, because of the circular effect of having TAZE RAY LUNDY pay amounts through Court which would go to the original Plaintiff, DEBBIE SUE HUDSON LUNDY, and then back to TAZE RAY LUNDY....

The Court further made an affirmative finding that Plaintiff is at the present time financially able to provide adequate support for the parties' minor child without any contribution from Defendant,....

Based upon the foregoing, it is, therefore, ORDERED as follows:

1. The Defendant, TAZE RAY LUNDY, is to continue to pay one-half (½) of all medical expenses incurred for the benefit of the parties' minor child, and is to further pay the sum of $50.00 per week as child support as of October 27, 1983, pending further Orders of this Court or a Final Order from an appropriate Appellate Court.

2. The matters hereinabove set forth are to be deemed findings of fact and conclusions of law by the Court....

On November 12, 1985, notice of appeal was filed by the defendant.

On April 29, 1986, a document was filed over the signature of the Trial Judge entitled "Authentication of Depositions".

The proper manner of preserving depositions for consideration on appeal is to copy them into the transcript or authenticate them as exhibits to a transcript filed within 90 days after notice of appeal. TRAP Rule 24.

On appeal, defendant presents issues as follows:

1. May an adult enter a binding agreement to assume sole responsibility for providing for a minor child?

2. Did Plaintiff herein enter such an agreement?

3. Have circumstances changed since the agreement which now prevent Plain-

tiff from meeting her obligation thereunder?

4. Is Defendant's assertion of the collateral oral agreement as a defense to Plaintiff's claim for child support barred by the Default Judgment and Final Decree of Divorce under the doctrine of res judicata?

Appellee presents the following issues:

1. Whether or not the doctrine of res judicata was applicable in the instant action to bar the Defendant from once again litigating the issue of child support.

2. Whether or not a valid contractural agreement existed between the Plaintiff and the Defendant, binding on a court or courts of competent jurisdiction, so as to relieve the obligation of the Defendant to provide support for the parties' minor child.

The parties stipulated that they were married on April 1, 1982, that the child was born on August 2, 1982, that defendant is the biological father of the child, and that:

8. Petitioner agreed before the marriage and subsequent to birth of the minor child that she would not seek financial assistance from Respondent for the support of the minor child. Petitioner's attorney, Thomas L. Reed, Jr., informed Respondent of Petitioner's position in a letter of March 24, 1982, the contents of said letter stipulated herein.

9. Petitioner did ask for financial support in her petition for absolute divorce and such support was ordered by the Court in the Final Decree of Divorce.

The contents of the letter are not stated in the stipulation, nor is the letter attached to the stipulation.

Appellant's brief relies upon a statement in the final judgment as follows:

[A]nd further the Court found that all twenty-four matters asserted in the summary section of Defendant's reply brief were either conceded by Plaintiff or found to be true by the Court.

The "Summary" of "Respondent's Reply Brief" reads as follows:

This case presents such a myriad of facts and issues that it is difficult to address all of them at one time in one document but a few of these issues are as follows:

1. The Petitioner's life experience, including her age, was much greater that that of Respondent. Petitioner was four months pregnant when she married her first husband (Deposition page 19 line 24) and she learned from that experience that you have to have protection to keep you from getting into trouble (Deposition page 37 line 22).

2. Petitioner stated that she wanted a daughter to go with her son (Deposition page 53 line 20).

3. Respondent did not want to get married. (Deposition page 71 line 16)

4. It was Petitioner's idea to have an ante-nuptial agreement. (Deposition page 72 line 24)

5. One purpose of the ante-nuptial agreement was to protect her house from Respondent's claims. (Deposition page 73 line 4)

6. Petitioner asked that the ante-nuptial agreement contain a provision stating that Respondent would never have to pay any child support. (Deposition page 74 line 8)

7. One of the important reasons Petitioner wanted Respondent to marry her was her fear that she would lose custody of her child by her previous husband should she bear a second child out of wedlock. (Deposition page 75 line 16)

8. Petitioner reaffirmed the contents of her attorney's letter dated March 24, 1982. (Deposition page 81 and 82)

9. Petitioner would never have filed a contempt action if the child had been born normal. (Deposition page 87 line 16)

10. Petitioner wanted an agreement whereby Respondent would give up all of his rights and responsibilities with regard to said child so that he could never try to take custody of her away from Petitioner. (Deposition page 87 line 20)

11. Petitioner knew her child might not be normal and assumed full responsibility for the financial consequences for the abnormality. (Deposition page 88 line 6)

12. Petitioner entered the non-support agreement with Respondent in part to induce him to marry her. (Deposition page 89 line 1)

13. The agreement by Petitioner to assume sole responsibility for the support of said child was unconditional. (Deposition page 89 and 90)

14. Petitioner admits that Respondent did everything he was supposed to do pursuant to the agreement but that she did not. (Deposition page 91 line 9)

15. Petitioner states again that one of the purposes of the agreement was to protect herself from Respondent getting her house or anything like that. (Deposition page 92 line 22)

16. Petitioner and her attorney told Respondent that the support provisions in the complaint and final decree of divorce were mere legal formalities and Petitioner assured Respondent that she would never seek any support from him in spite of said language. (Deposition pages 94 and 95)

17. Petitioner never told Respondent that she had changed her mind about not actually seeking the enforcement of support against him prior to filing the contempt petition. (Deposition page 96 line 1)

18. Once again, Petitioner assured Respondent she would seek no support from him in spite of the language in the complaint and final decree of divorce. (Deposition page 98 and 99)

19. At the time she made said promises, Petitioner intended to keep them. (Deposition page 101 line 33)

20. Petitioner paid all costs associated with the ante-nuptial agreement, marriage, and divorce. (Deposition page 101)

21. One of the Petitioner's goals was that Respondent never have any contact with the minor child. (Deposition page 102 line 22)

22. Petitioner recognized that Respondent had a number of rights which he gave up in order to comply with the terms of the agreement made by the parties. (Deposition page 103 and 104)

23. Once again, Petitioner assured Respondent that even though it couldn't be put in writing, she would never actually ask for child support payments from him. She stated on page 104 at line 11:

A. I understood legally that I couldn't not ask for child support. I mean, I could tell Taze I didn't want it, but legally there was no way that I could put it in writing.

Q. I understand. But you did....

A. I did tell him I wouldn't ask for it. Yes.

24. Petitioner is not presently spending any additional money for the care of the child due to the child's special physical problems. (Deposition page 106 at line 8)

Appellant's brief states:

It is clear that prior to their marriage, the parties entered two agreements collateral to each other. One was the written ante-nuptial agreement (*Record*, p. 26) and the other was the collateral oral agreement in which Plaintiff agreed never to seek child support or any other expenses from Defendant in return for his agreement to execute the ante-nuptial agreement and to abide by its terms which included his agreement to marry Plaintiff for the purpose of legitimizing her child and then allowing her to divorce him without making any claim to her property or income. The written agreement was fully executed by both parties and is not disputed by either party. Its terms speak for themselves. (*Record*, p. 26)

The collateral oral agreement is likewise acknowledged by both sides and Defendant is not attempting to form a contract based solely upon the letter sent to Defendant by Plaintiff's attorney dated March 24, 1982. (*Record*, p. 25) While the letter does, indeed state, in part, the terms of the contract, it is not the contract itself. The contract itself was an oral agreement between the parties resulting from a meeting of the minds of the parties and mutual assent to its terms. *American Lead Pencil Company v. Nashville C & S & L Railroad,* 124 Tenn. 57, 134 S.W. 613, 615 (1911). Plaintiff herself admits this agreement as follows: ...

It does not appear that plaintiff at any time plead the statute of frauds as to her alleged oral agreement to assume full responsibility for all expenses connected with the birth or care of the child.

Nevertheless, it is undisputed that, after the alleged oral agreement was made, plaintiff filed a divorce suit against defendant demanding child support, that defendant failed to respond to said suit, that a default order was entered and that a final decree required defendant to pay child support.

The deposition of defendant contains his admission that he received a copy of the complaint and of the final decree.

There is no evidence that defendant made any effort to obtain any relief from said final decree from the date of its entry on March 28, 1983, until October 20, 1983, when he filed a response to plaintiff's motion for judgment and contempt.

A divorce decree becomes final after the expiration of the time for appeal despite any reservation therein of continuing jurisdiction of custody or support. *Damron v. Damron* 212 Tenn. 14, 367 S.W.2d 476 (1963); *Davenport v. Dav-*

*enport* 178 Tenn. 517, 160 S.W.2d 406 (1942); *Hicks v. Hicks* 26 Tenn.App. 641, 176 S.W.2d 371 (1943).

Such a final decree is conclusive upon all issues which might have been raised in the proceeding. *Hicks v. Hicks,* supra.

■ Defendant had one clear opportunity to resist plaintiff's claim for child support on the basis of her alleged oral agreement. Having failed to avail himself of that opportunity, the law does not afford him another.

The foregoing is conclusive as to defendant's reliance upon the alleged oral agreement except for his reference to TRCP Rule 62.02 in his "Answer, Motion and Affidavit" filed nearly 18 months after the final decree. The brief of appellant contains no reference to the application for relief under Rule 60.02, no citation to the record, citation of authorities, or argument in support thereof. It must be assumed that the application for relief under Rule 60.02 has been abandoned.

Nevertheless, said application for relief has been examined and found to be without merit in that it fails to state grounds upon which relief from the final judgment should be granted.

The foregoing disposes of determinative issues and renders unnecessary the consideration of other issues presented by the parties.

The judgment of the Chancellor is affirmed. Costs of this appeal are taxed against defendant. The cause is remanded to the Chancery Court for such further proceedings as may be necessary and proper.

*Affirmed and remanded.*

LEWIS and CANTRELL, JJ., concur.