IN THE COURT OF APPEALS OF TENNESSEE

FILED

December 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| PAUL WILLIAM McGAFFIC, | ) C/A NO. 03A01 |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| v. | ) HAMILTON COUNTY CIRCUIT COURT |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| JANICE ELOIS McGAFFIC, | ) |
| | ) HONORABLE WILLIAM L. BROWN, |
| Respondent-Appellee. | ) JUDGE |

For Appellant

ROBERT D. LAWSON
Lawson & Lawson
Chattanooga, Tennessee

For Appellee

ROBERT J. BATSON, JR.
Chattanooga, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

This is a post-divorce case. Paul William McGaffic filed a petition seeking to modify his child support and periodic alimony *in futuro* obligations. As pertinent to the issues on this appeal, the trial court refused to modify its existing child support and alimony *in futuro* decrees. Mr. McGaffic appealed, raising issues that essentially present the following questions:

> 1. Does the evidence preponderate against the trial court's refusal to modify its alimony *in futuro* award by either terminating it, or reducing it and/or converting it to an award of rehabilitative alimony?
>
> 2. Does the evidence preponderate against the trial court's refusal to modify its child support award?

The appellee, Janice Elois McGaffic, argues, by way of separate issues, (1) that, at the hearing below, Mr. McGaffic abandoned his request for a reduction in child support, and (2) that she is entitled to reasonable attorney's fees for enforcing the trial court's judgment on this appeal.

I

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Rule 13(d), T.R.A.P. We must defer to this presumption unless we find that the evidence preponderates against those findings. *Id.; Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not afforded the same deference. *Campbell v. Florida Steel*

2

*Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

Our *de novo* review is tempered by the principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn.App. 1991). In fact, this court has noted that

> ...on an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary.

*Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn.App. 1974).

II

When the parties were divorced on October 9, 1989, Ms. McGaffic was awarded custody of the parties' three minor children, and Mr. McGaffic was ordered to pay child support of $1,000 per month and periodic alimony *in futuro* of $500 per month. At that time, Ms. McGaffic was 39 years old. She and Mr. McGaffic had been married for slightly over 20 years. The divorce was granted on the ground of cruel and inhuman treatment or conduct. The divorce judgment includes the parties' agreements as to custody, child support, and alimony *in futuro*.

3

By order entered November 10, 1993, Mr. McGaffic's child support obligation was reduced, on his petition, to $500 per month because his two older children had then reached the age of majority. In the same order, the trial court refused to reduce the alimony *in futuro* award of $500 per month.

The current dispute began when Mr. McGaffic filed a petition on November 6, 1996, alleging that his "income has decreased substantially," and that his former wife "no longer requires his assistance." He asks the court to "adjust child support payments in accordance with the guidelines and terminate alimony payments." At the hearing below, as an alternative theory, Mr. McGaffic argued that if the court was not inclined to terminate the alimony, it should reduce it and/or convert it to rehabilitative alimony.

III

The appellee argues that Mr. McGaffic abandoned his request for modification of the monthly child support award of $500. She contends that this abandonment can be found in the remarks of her former husband's counsel. We disagree.

In his opening statement, counsel for Mr. McGaffic made the following comments:

> We've also asked the Court to take a look at
> child support, but quite frankly, Your Honor,
> Mr. McGaffic doesn't want to pursue that
> strenuously. He's paying $500 a month child
> support and another $100 for medical and
> dental expenses, which is $600 a month. He's

4

> not really seriously asking adjustment on that if the Court would terminate the alimony.
>
> If the Court doesn't feel that this is an instance for the termination of alimony, then we would like the Court to adjust everything in accordance with his present ability to pay.

In closing argument, Mr. McGaffic's counsel made the following statements:

> We think under the present income level that he has that we were hoping that the Court would cancel the alimony, but if the Court doesn't see fit to cancel it, we think it ought to be reduced down to a level that he can pay.
>
> Under his present situation, he's paying $600 a month for the upkeep of the child, which is more than the guideline would call for, but like I said in the beginning, we are not really here to challenge that. We are here to primarily ask the Court to look at the alimony.

We do not understand counsel's comments to be an unconditional, unequivocal abandonment of his client's request for a modification of child support. It is obvious that Mr. McGaffic was, and still is, more interested in obtaining relief with respect to his alimony *in futuro* obligation; but it is clear that the issue of the appropriate amount of child support was very much before the lower court. It was litigated by the parties, and it is now properly before us on this appeal. The appellee's position to the contrary is without merit.

IV

In denying Mr. McGaffic any relief, the trial court made findings that impact our analysis in this case:

> ...the Court is thoroughly convinced from Mr. McGaffic's own testimony that he has the ability to earn much more than he's earning.
>
>     *     *     *
>
> ...he has certainly demonstrated the ability to earn much more money, and the Court believes that, in fact, he is earning more money than what he has put on his income and expense statement.
>
>     *     *     *
>
> But the Court feels that not only does he have an ability to earn much more than he shows he is earning, I think he is earning more.

Thus, it can be seen that the trial court made two important findings in the context of the issues before us: first, it found that Mr. McGaffic was actually earning more than he wanted the court to believe; and second, that, in any event, his testimony, taken at face value, shows an *ability to earn more*.  We will analyze Mr. McGaffic's issues with these two findings in mind.

V

In a post-divorce proceeding, a court has the power to "decree an increase or decrease of [an award of spousal support] only upon a showing of a substantial and material change of circumstances."  T.C.A. § 36-5-101(a)(1).  Unless and until a petitioning party demonstrates a "substantial and material change

of circumstances," the existing award of spousal support is *res judicata*. **Hicks v. Hicks**, 176 S.W.2d 371, 374-75 (Tenn.App. 1943).

Prior to 1994, requests to modify child support were subject solely to the material and substantial change of circumstances standard. **Id.** at 375. A new standard dealing with a modification request based on an increase or decrease in an obligor's income was introduced by the passage of Chapter 987 of the Public Acts of 1994:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

T.C.A. § 36-5-101(a)(1). The child support guidelines were subsequently modified, effective December 14, 1994, to provide as follows:

> For the purposes of defining a significant variance between the guideline amount and the current support order pursuant to T.C.A. § 36-5-101, a significant variance shall be at least 15% if the current support is one hundred dollars ($100.00) or greater per month...

Tenn.Comp.R. & Regs., ch. 1240-2-4-.02(3).

7

In the instant case, the evidence reflects that in 1993, when the issues of child support and alimony were last "visited" by the trial court, Mr. McGaffic was earning income at an annual gross rate of $38,256. At the time, he operated lunch room concessions in various office buildings in Chattanooga. Also before the court in 1993 was Mr. McGaffic's work history, including a stint as a service advisor at a Ford dealership from 1989 to 1991, when he earned as much as $36,000 gross per year.

The trial court was not authorized to modify Mr. McGaffic's child support obligation unless it found a "significant variance...between the guidelines and the amount of support currently ordered." T.C.A. § 36-5-101(a)(1). Under the child support guidelines, there would be a "significant variance" downward if the child support produced at Mr. McGaffic's current level of income was less than the child support decreed in "the current support order" by 15% or more. Tenn.Comp.R. & Regs., ch. 1240-2-4-.02(3). However, this principle is subject to another provision of the child support guidelines that is particularly relevant in the instant case:

> Such [significant] variance would justify the
> modification of a child support order unless,
> in situations where a downward modification
> is sought, the obligor is willfully and
> voluntarily...underemployed.

*Id*. Also relevant is another provision of the guidelines:

> If an obligor is willfully and voluntarily
> ...underemployed, child support shall be
> calculated based on a determination of
> potential income, as evidenced by educational
> level and/or previous work experience.

Tenn.Comp.R. & Regs., ch. 1240-2-4-.03(3)(d).

Mr. McGaffic testified that his current income is in the range of $13,300 per year. He works for a blind individual who operates a vending concession. Mr. McGaffic earns $7.00 per hour at that employment. He claimed at trial that he was able to subsist on this income because his wife worked and because they lived with his father, whose retirement income, of an undisclosed amount, was available to help defray the household bills.

There was a great deal of testimony below regarding Mr. McGaffic's hobby of competitive drag racing. He has been involved in this endeavor since he was 16 years old. In 1995, he earned prize money of $17,428, but claimed a net loss for tax purposes of $7,850; however, ignoring his non-cash depreciation deduction of $9,520,[1] he had a net income from racing of $1,670.

Ms. McGaffic contended at trial, and argues here, that her former husband is pursuing his lesser-paying employment because his current employer permits him to leave early for his weekend drag racing competition. While admitting that he participates in such competition at various sites from March to October, usually three weekends a month, he attempted to downplay

---

[1] Depreciation is not an allowable deduction in calculating self-employment income. *See* Tenn.Comp.R. & Regs., ch. 1240-2-4-.03(3)(a).

10

the significance of this hobby *vis-a-vis* his employment by testifying that he leaves as early as Wednesday or Thursday "only" in connection with five or six of his weekend trips.  On the other occasions, according to him, he leaves after work on Friday or on Saturday morning.

Mr. McGaffic's adult daughter, who had worked with her father in his current employment for a period of time, testified that he told her that he wanted to work at his current employment because his employer allowed him to be off from work when he needed to leave early for his weekend drag racing competitions.

The trial court did not believe Mr. McGaffic's testimony that his income was limited to $13,300 from his employment and a net loss from his drag racing hobby of some $7,850 per year.  This determination was based, at least in part, on Mr. McGaffic's testimony that he owned the following assets, subject to the monthly debt payments shown:

> (1)   1995 Ford Escort, subject to monthly payment of $302.66;
>
> (2)   1992 Mazda, subject to monthly payment of $220.90;
>
> (3)   1992 Ford Motor Home[2];
>
> (4)   $9,800 race car;
>
> (5)   1995 Pace American enclosed car trailer;
>
> (6)   1989 Kawasaki four-wheel scooter.

---

[2]With respect to the 1992 motor home, Mr. McGaffic testified that his retired 84-year-old father made the monthly payments of $429; however, it is clear that at least $8,000 of Mr. McGaffic's money was used as the down payment for the motor home.

11

The trial court concluded that Mr. McGaffic's possessions belied his testimony of meager income. We do not find that the testimony regarding the contributions of his wife and father is sufficient to rebut the trial court's conclusion. The facts before the trial court support that court's questioning of Mr. McGaffic's credibility. Furthermore, since we did not observe him when he testified, we are not in a position to disagree with that court's assessment of his credibility. *Massengale*, 915 S.W.2d at 819.

More importantly, the trial court found that Mr. McGaffic had the proven ability to earn more than he is currently earning, even taking his testimony at face value. His work history, as well as the testimony of his daughter, give credence to such a finding. The evidence does not preponderate against -- but rather supports -- a finding that Mr. McGaffic is underemployed because of his desire to engage in his drag racing hobby. Furthermore, there is nothing before us to suggest that Mr. McGaffic cannot pursue his former work as a service advisor at an automobile dealership.

In view of Mr. McGaffic's apparent ability to earn income at a rate comparable to his 1993 earnings, the evidence does not preponderate against the trial court's implicit finding that there has not been a "significant variance" as defined in T.C.A. § 36-5-101(a)(1).

12

VII


We also do not find that the evidence preponderates against the trial court's factual findings supporting its decision not to modify Mr. McGaffic's alimony *in futuro* obligation. The evidence does not preponderate against a finding that Mr. McGaffic failed to show a material and substantial change of circumstances since 1993.


As we have previously indicated, Mr. McGaffic, because of his work experience, is *capable* of earning as much as, if not more than, the income he earned in 1993. As to Ms. McGaffic's employment, there has been no change in this circumstance -- her current job is the one she had in 1993, when the issue of alimony was last reviewed. She is now a 47-year-old woman with a high school education plus two college-level computer course credits. She is the mother of a 13-year-old who basically has no meaningful contact with his father.[3]


The trial court did not abuse its discretion in refusing to terminate, lower, or convert the nature of, the alimony previously ordered.


VIII


The appellee seeks attorney's fees for enforcing the trial court's judgment on this appeal. Such an award is

---

[3]Mr. McGaffic's almost total lack of visitation with his minor son is another factor militating against a reduction in child support. *See* Tenn.Comp.R. & Regs. 1240-2-4-.04(1)(b).

13

appropriate in this case.  *See* T.C.A. § 36-5-103(c).  This case is remanded to the trial court to hold a hearing to determine the amount of reasonable fees and expenses to which the appellant is entitled.  *See **Folk v. Folk***, 357 S.W.2d 828 (Tenn. 1962).

      The judgment of the trial court is affirmed.  Costs on appeal are taxed against the appellant and his surety.  This case is remanded for further proceedings, consistent with this opinion, and for collection of costs assessed below, all pursuant to applicable law.

 

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Don T. McMurray, J.