IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 13, 2002 Session

## APRIL GRANT INGLE v. ROBERT WAYNE INGLE

**Appeal from the Circuit Court for Hamilton County**
**No. 97DR1960     W. Neil Thomas, III, Judge**

**FILED AUGUST 6, 2002**

**No. E2001-02802-COA-R3-CV**

This is a post-divorce case. The parties were divorced in 1998. On September 21, 2000, April Grant Ingle ("Mother") filed a petition to modify the parties' divorce judgment. She alleged that Robert Wayne Ingle ("Father") had been unemployed at the time of the divorce, and, consequently, was not ordered to pay child support. She further alleged that he had subsequently become employed and that he should now be ordered to pay child support computed pursuant to the Tennessee Child Support Guidelines ("the Guidelines"). Mother also sought to modify Father's visitation as set forth in the divorce judgment. After comparing the parties' respective incomes, the trial court ordered Father to pay child support of $177 per month. Mother appeals. We vacate the trial court's child support award and the effective date of that award. The remainder of the trial court's order is affirmed. This case is remanded to the trial court for such additional proceedings as may be necessary and for the entry of an order consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part and Vacated in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, and D. MICHAEL SWINEY, JJ., joined.

Arnold A. Stulce, Jr., Chattanooga, for the appellant, April Grant Ingle.

Richard A. Schulman and Brenda R. Grant, Chattanooga, for the appellee, Robert Wayne Ingle.

**OPINION**

I.

The parties have one minor child, Robert Cameron Ingle (DOB: 12/31/95). The judgment of divorce provides that the parties "are vested with joint legal and physical custody of the parties' son[.]" When the parties were divorced in 1998, Father was involved in a labor dispute with his employer, the Tennessee Valley Authority ("TVA"). Because of this dispute, Father had been unemployed since April, 1995. The Marital Dissolution Agreement ("the MDA") recites the following with respect to the parties' respective times with their child:

> [Mother] shall have visitation with the parties' son during all times that the child is not with the Father (as the visitation is set forth herein).
>
> [Father] shall have visitation with the parties' son each weekday during the hours that [Mother] is working.
>
> [Father] shall have visitation with the parties' son beginning at 10:00 a.m. on Sunday and continuing until Tuesday evening (at the completion of [Mother's] work day) at which time he shall return the child to the [Mother]. However, during those times that [Mother] has board meetings after work (2 Tuesdays per month), [Father] shall keep the Child overnight and shall return him to the [Mother] Wednesday morning prior to school.
>
>                \*              \*              \*
>
> If [Father] should obtain employment which would require him to work during the day, [Father] will have visitation with the Child from Sunday at 10:00 a.m. until Wednesday evening and [Mother] will have visitation from Wednesday evening until Sunday at 10:00 a.m.
>
> If [Father] should obtain employment which would require him to work during the evening, [Father] shall continue to care for the Child at his home during [Mother's] work hours.
>
> The parties will equally divide all major holidays until the Child becomes school age.
>
> Once the Child becomes school age, the parties will then equally divide all school breaks, holidays, etc.

The MDA further provides that "[b]ecause [Father] is currently unemployed and will be providing childcare services, no child support will be paid by [Father] or by [Mother]."

In 1999, Father won his labor dispute with TVA. He received a substantial lump sum payment by way of an arbitration award. The award was designed to compensate him for wages lost during the period of his unemployment. Father returned to work at TVA on October 25, 1999. He received a smaller lump-sum payment from TVA in 2000.

On September 21, 2000, Mother filed her petition for modification. Following court-ordered mediation that was not totally successful, the trial court conducted a hearing on May 21, 2001. The court found that a substantial and material change of circumstances had occurred in light of Father's return to full-time employment. In its order modifying the judgment of divorce, the MDA, and the permanent parenting plan, the trial court decreed as follows:

> [T]hat [Mother] shall be designated as the primary residential parent of the parties' son, ... but that the parties shall continue to co-parent the Child.
>
> ... [T]hat [Father] shall have parenting time with the Child three weekends each month. During the first weekend of his three weekends per month, [Father] will pick up the child at school on Friday afternoon and return him to school on Monday morning. During the second and third weekends of [Father's] three parenting weekends each month, he shall have parenting time with the parties' minor child from 6:00 p.m. on Friday to Sunday at 6:00 p.m.
>
> [T]hat [Father] shall pay child support in the amount of $177.00 per month since the parties are co-parenting and there is a difference of about $1,000.00 per month in their respective incomes. Accordingly, the child support is based upon that difference in their income. The parties will equally share the expense of their son's private school tuition, books and related private school expenses.

Mother argues that the trial court utilized an improper method to calculate child support. Mother also raises the related issue of whether the trial court should have included "(1) overtime and bonuses and (2) major arbitration awards received by [Father]" in its calculation of Father's income for child support purposes. Father raises the issue of whether the trial court erred in finding a material change in circumstances that led to the court modifying the MDA regarding custody and visitation time.

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995).

The trial court's conclusions of law, however, are accorded no such presumption. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

## III.

### A.

We first address the question of the proper amount of child support. T.C.A. § 36-5-101(a)(1) (2001) provides as follows regarding the modification of a prior decree pertaining to child support:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

***Id***. The Guidelines define a "significant variance" as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3). In the instant case, Father was unemployed at the time of the divorce and, as far as the record shows, was not receiving any income at that time. His gross income at the time of the most recent hearing below was in excess of five thousand dollars per month. Obviously, there is a "significant variance" as contemplated by T.C.A. § 36-5-101(a)(1). Father does not argue to the contrary.

T.C.A. § 36-5-101(e)(1)(A) (2001) provides that

> In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

*Id*. The Guidelines base the child support award on "a flat percentage of the obligor's [*i.e.*, the parent with whom the child does not primarily live] net income." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(2). In the case of an obligor with one child, the Guidelines call for child support in the amount of 21% of the obligor's net income. Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(5).

The trial court found that "there is a difference of about $1,000 per month in [the parties'] respective incomes." It based the $177 per month figure "upon that difference in their income." In the recent case of *Gray v. Gray*, SC No. M2000-00620-SC-R11-CV, 2002 Tenn. LEXIS 309 (Tenn., filed July 9, 2002), the Supreme Court opined as follows:

> We hold that the use of a comparative analysis of the parties' earnings is improper under the Child Support Guidelines. Rule 1240-2-4-.03(2) specifically states that "the income of the obligee should not be considered in the calculation of or as a reason for deviation from the guidelines in determining the support award amount." Consideration of the parties' relative incomes, therefore, is precluded by Tennessee's Child Support Guidelines.

*Id*. at *9. *See also **Robertson v. Robertson***, C/A No. 03A01-9711-CV-00511, 1998 Tenn. App. LEXIS 761 at *11-12 (Tenn. Ct. App. E.S., filed Nov. 9, 1998) (finding "that the trial court erred when it established child support based upon the parties' relative earnings"), *rev'd in part on other grounds*, 76 S.W.3d 337 (Tenn. 2002). It is clear under the rubric of ***Gray*** that only the obligor's income is to be considered and child support under the Guidelines must be computed based upon his or her net income.

The evidence presented to the trial court establishes that Father's income from his TVA salary for the year 2000 was $60,500. Father presented an affidavit from the manager of payroll operations at TVA that certified this figure. Father also provided a March, 2001, pay stub from TVA reflecting his 2001 salary as $60,550.

In July, 1999, Father received his first lump-sum arbitration settlement payment.[1] The affidavit from TVA's payroll operations manager states that "[Father] received lump sum payments of $290,212.00 in 1999, and $30,712.20 in 2000, in an arbitration award." The affidavit is somewhat confusing in that it also states that Father's 1999 "base salary" was $58,000 and his "gross salary" was $299,135.20.

---

[1]Regarding Father's arbitration award, the parties' MDA provides that

> [t]he parties anticipate that [Father] may receive a substantial settlement as a consequence of this litigation. Contingent upon receipt of the litigation proceeds, [Father] shall pay to [Mother] the sum of Ten Thousand Dollars ($10,000).

After he received the lump-sum arbitration settlement, Father paid Mother $10,000 as per this provision of the MDA.

The record contains little testimony about these lump-sum payments. The trial court noted that the total payments amounted to substantially more than the sum of the figures listed as Father's "base salary" for the period he was unemployed.[2] The court speculated that the lump-sum payments may have included an element of interest. The record does not show precisely the elements that make up these payments. We do note that the record is devoid of any evidence that Father has ever received either overtime pay or a bonus as part of his salary from TVA.

Mother argues for a calculation of Father's income that includes the arbitration award payments. Mother proposes that the total amount of the award should be averaged over the years that Father was unemployed, which, according to her, would result in a higher monthly income figure. The trial court addressed this argument succinctly and correctly: "the problem I have in this case is if I do that I'm disregarding what his actual pay is."

In cases where a court is called upon to set child support, the goal is to ascertain the obligor's true net income as of the time of the computation. This is necessarily a forward-looking computation in the sense that such awards are generally, or for the most part, prospective in nature. Where an obligor's income fluctuates, the Guidelines provide that "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., should be averaged and added to the obligor's fixed salary." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(b).

In the present case, as the trial court noted, the record contains a precise figure as to Father's salary income for both 2000 and 2001. There is nothing to suggest that Father will receive other lump-sum payments in the future, nor any other revenues that would cause his income to fluctuate. As the court stated in **Smith v. Smith**, C/A No. M2000-01094-COA-R3-CV, 2001 Tenn. App. LEXIS 320 (Tenn. Ct. App. M.S., filed May 2, 2001),

> courts are to set the amount of prospective child support so that
> children will receive support reasonably consistent with their
> parents' resources and ability to provide support. These goals are
> best fulfilled by use of current, accurate information regarding the
> obligor parent's income.

*Id*. at \*14. We find the trial court, which did use the most "current, accurate information," did not err in its calculation of Father's salary income. The evidence preponderates in favor of its finding that Father's monthly salary income is $5,212.48. Father filed an income and expense statement reflecting that he also makes $87.92 per month in rental income. This brings his total gross monthly income to $5,300.40.

The Guidelines allow a court to order a downward deviation in the amount of child support "in cases where physical custody of the child(ren) is more equally divided between the

---

[2]The affidavit certified that Father's "base salary" was as follows: 1995--$53,350; 1996--$53,350; 1997--$54,570; 1998--$56,375; 1999--$58,000; 2000--$60,500.

parties than occurs in a situation where one party has an average amount of overnight visitation as defined in 1240-2-4-.02(6)." Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(2)(b). The Guidelines provide for an "average visitation period" of 80 days per year. Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(1)(b) and ch. 1240-2-4-.02(6); *see also **Casteel v. Casteel***, C/A No. 03A01-9703-CV-00073, 1997 Tenn. App. LEXIS 518 (Tenn. Ct. App. E.S., filed July 24, 1997), *perm. app. denied,* March 2, 1998.

In the instant case, the visitation schedule ordered by the court provides that Father will have overnight visitation totaling 84 days per year.[3] Father points out, however, that this total does not include his visitation time for holidays and vacations. The MDA provides that the parties will "equally divide all school breaks, holidays, etc." Both parties testified that they customarily worked out visitation time for holidays and vacations by agreement and generally split such time equally. The trial court was not presented with an estimate of Father's time with the child during summer vacation and holidays. We suspect that 20 additional days is a generous estimate of Father's time with the child during these periods. This is based on two weeks in the summer and two weeks for holidays. We have excluded weekend days because they are already included in the 84-day calculation. Thus we would estimate Father's total visitation time to be some 104 days or 28% of the total time annually.

## B.

We believe that it is appropriate to remand this case to the trial court so that the court can determine *whether*, and, if so, to what extent, the Guidelines-mandated support based on Father's monthly salary, as found by the trial court, should be subject to a downward deviation. If the court determines that such a deviation is justified, it should state in writing its reasons for doing so. *See* T.C.A. § 36-5-101(e)(1)(A). *See also* Tenn. R. & Regs., ch. 1240-2-4-.04(1)(b).

## C.

Mother complains that the trial court "ignored [her] request that [Father] be required to provide health insurance for the child." The Guidelines provide the following regarding health insurance:

> If the obligor is not providing health insurance for the child(ren), an amount equal to the amount necessary for the obligee to obtain such insurance shall be added to the percentage calculated in the above rule.

---

[3]During one weekend each month, Father has three days of visitation; these weekends represent 36 days a year. The other two weekends amount to 4 days a month or a total of 48 days a year. Thus, weekend visitation totals 84 days a year.

Tenn. R. & Regs., ch. 1240-2-4-.04(1)(a). Father testified without contradiction that he began providing health insurance for his son as soon as he returned to work. The MDA provides the following regarding health insurance:

> [Mother] shall cause the Child to continue to be covered under medical insurance, ... which is provided from time to time by or on behalf of the [Mother's] employer ... If health insurance coverage ceases to be provided by [Mother's] employer, then the parties shall share equally the expense of obtaining a new health insurance policy on behalf of the Child.

Pursuant to the Guidelines, the trial court is directed on remand to memorialize that which is apparently already occurring, *i.e.*, that Father is providing health insurance for his child. If he is not providing such coverage, he should be ordered to do so or ordered to reimburse Mother for her expenditures for health insurance coverage for the parties' child.

### D.

In child support modification cases, the "'trial court has the discretion to order the modification effective as of the date of the modification petition, the date of the final hearing, or any appropriate date in between.'" *Huntley v. Huntley*, 61 S.W.3d 329, 339 (Tenn. Ct. App. 2001) (citation omitted). Under the facts of this case, we believe that Father's new child support obligation as determined by the trial court on remand should be effective as of the date of filing of the petition for modification. The parties testified that Father began paying child support in the amount of $672 per month in January, 2001. The record is not clear as to whether and, if so, when Father stopped making these payments. Father is entitled to a credit against his child support obligation, as determined by the trial court on remand, for any child support payments made to Mother after September 21, 2000, the date of filing of her petition. On remand the trial court should determine the credit to which Father is entitled.

### E.

Father argues on appeal that the trial court erred in finding a substantial and material change of circumstances warranting a change in the custody and visitation arrangements. We disagree.

The Supreme Court has recently addressed appellate review of a visitation order:

> [T]he standard for appellate review of a trial court's child visitation order is controlled by our decision in *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). There, we noted that " 'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge.' " *Id.* at 429 (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Accordingly, we held that

a "trial court's decision [on visitation] will not ordinarily be reversed absent some abuse of that discretion." ***Id.***

\*                \*                \*

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000); ***State v. Gilliland***, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." ***State v. Shirley***, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998).

***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001).

The standard for making a determination regarding whether there has been a substantial and material change of circumstances, such that the court should reexamine the custody and visitation arrangements, was set forth in ***Steen v. Steen***, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001):

Child custody judgments are *res judicata* upon the facts existing at the time of the hearing. ***Hicks v. Hicks***, 26 Tenn. App. 641, 176 S.W.2d 371 (Tenn. Ct. App. 1943). But the trial court retains control over the custody of a minor child and may make such changes in the custody order as the exigencies of the case may require. ***Adelsperger v. Adelsperger***, 970 S.W.2d 482 (Tenn. Ct. App. 1997). The party seeking to change custody must prove (1) that the child's circumstances have materially changed in a way that could not have been reasonably foreseen at the time of the original custody decision, and (2) that the child's best interests will be served by changing the existing custody arrangement. ***Id.*** at 485.

***Id.***

In the present case, Mother testified, without contradiction, that for approximately the first five months after the divorce, the parties' custody and visitation arrangement was substantially that of the terms of the MDA. In July, 1998, the parties' son was enrolled in day care, so Father was not furnishing childcare during workdays as provided for in the MDA, notwithstanding the fact that he was unemployed. Beginning in or about July, 1998, the child was staying with Father two nights per week. In late summer or early fall, 1999, the parties agreed that Father would have visitation

only on Saturday evenings.  This arrangement continued until after the mediation in December, 2000, when Father's visitation time increased.

Thus, it can be seen that approximately 1½ years after the entry of the judgment of divorce, Father was exercising one night of visitation per week, when the MDA called for roughly equal childcare and visitation time between the parties.  In addition, at the time of Mother's petition, Father's employment status had changed from unemployed to full-time employment.  Under the facts of this case, we do not find the trial court abused its discretion in finding a substantial and material change of circumstances warranting another look at the issue of Father's visitation.

F.

In its judgment, the trial court decreed that "either party may, by motion, seek review of all portions of this Order, including but not limited to, parenting time arrangements."  This ruling was in response to Father's testimony that his work schedule at TVA was probably going to change rather dramatically in the late fall or early winter of 2002.  The trial court attempted to provide a way to review the visitation arrangement, by motion, if Father's work schedule did in fact so change.  In a subsequent order, after a hearing on Mother's motion to alter or amend the judgment, the court amended its previous order

> to provide that upon any such review as contemplated by Paragraph 5 of the Order of August 8, 2001, that the movant shall have the burden of proving a material change of circumstances and the best interests of the child with respect to any such review by the Court, but a change in defendant's work schedule shall not be anticipated for the purpose of a change.

Mother argues that the trial court erred in purporting to allow a review by motion, rather than by a petition for modification.  The Court of Appeals was presented with a similar argument in *Gibson v. Prokell*, C/A No. W2000-01236-COA-R3-CV, 2001 Tenn. App. LEXIS 609 (Tenn. Ct. App. W.S., filed August 15, 2001), wherein the mother, Mrs. Gibson, argued that the trial court should have denied the father's motion for modification because "the motion should have been filed as a petition for modification with service of process issued and served upon Mrs. Gibson." *Id*. at *12.  The *Gibson* court responded as follows:

> Mrs. Gibson has not provided us with any authority that states that a Petition for Modification must be filed. Additionally, our own research leads us to no such conclusion. As a result, we find that the trial court did not err in entertaining Mr. Prokell's motion for relief.

*Id*.  The court, after a brief discussion of the concept of notice, held that "[u]nder the unique facts of the instant case, we find that Mrs. Gibson was provided with sufficient notice." *Id*. at *13.  We agree with the *Gibson* court that it is within the trial court's discretion to entertain a motion for

modification, so long as the nonmovant is provided with reasonable notice, an opportunity to respond, and, if necessary, a hearing on all disputed relevant issues.

## IV.

Mother has asked for an award of fees against Father for her counsel's fees and expenses, if any, in connection with this appeal. We award such fees and expenses, but direct that the computation of the amount due Mother should be set by the trial court on remand.

## V.

So much of the trial court's judgment as sets the amount of Father's child support at $177 per month and establishes the start date for his new support obligation is vacated. The remainder of the judgment is affirmed. This case is remanded to the trial court for such further proceedings as may be necessary and for the entry of an order, all consistent with this opinion. Costs on appeal are assessed to the appellee, Robert Wayne Ingle.

_____
CHARLES D. SUSANO, JR., JUDGE