IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 8, 2004 Session

## JEANNETTE CUTRER DAY SINIARD v. MARK ALAN SINIARD

**Appeal from the Circuit Court for Hamilton County**
**No. 99D2440      L. Marie Williams, Judge**

---

**No. E2003-01960-COA-R3-CV  - FILED NOVEMBER 29, 2004**

---

In this post-divorce case, Jeannette Cutrer Day Siniard ("Mother") sought to modify the parties' residential schedule pertaining to their children. That schedule provided that Caroline Siniard and Wesley Siniard (collectively "the children") would alternate weeks between Mother's home and the home of their father, Mark Alan Siniard ("Father"). The trial court granted Mother's request in part by designating her as the primary residential parent of Caroline.[1] In a subsequent order granting Mother child support, the trial court went further and designated Mother as the primary residential parent of *both* children. Father appeals, contending, among other things, that Mother failed to show a material change in circumstances warranting a modification of the residential schedule. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded.**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and WILLIAM H. INMAN, SR.J., joined.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellant, Mark Alan Siniard.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellee, Jeannette Cutrer Day Siniard.

**OPINION**

I.

In the judgment of divorce entered on February 7, 2001, Father was granted a divorce from Mother on the ground of inappropriate marital conduct. The court's memorandum opinion indicates that during the period of the parties' separation preceding their divorce, the parties agreed that the children would alternate weeks between them. However, at the time of the divorce hearing, Mother complained that this arrangement was not working. She claimed there were times when the children

---

[1]For ease of reference, we will refer to the children by their first names. No disrespect is intended.

appeared unkempt while in Father's care; that the parties had difficulty in discussing educational and medical decisions regarding the children; and that Father had failed at times to furnish the children their medications. The trial court received the testimony of the parties and other witnesses, including the children's therapist. The latter witness testified that Mother had prevented the shared parenting plan from working.

The trial court ordered that "the paramount best interest[] of the [c]hildren [] [is] served by designating [Father] as the primary residential parent." Father was also authorized to make major decisions regarding the children. The trial court determined that the evidence amply demonstrated that Father was "comparatively more fit to care for the [c]hildren than [Mother]," as Mother's maturity level was "suspect" given her choice to pursue a "freer lifestyle" in which her children, according to the trial court, were not her first priority. The trial court did decree that Mother was to have the children when they were out of school and Father was not available to care for them from the end of the school day until 6:00 p.m. In addition, Mother was granted the option of caring for the children when Father was otherwise unavailable. All of this was set forth in the judgment of divorce and the incorporated parenting plan.

After securing a new attorney, Mother filed a "Motion to Alter or Amend Judgment or in the Alternative for a New Trial and to Re-open Evidence" on March 19, 2001, in which she alleged the following: that the trial court's judgment was contrary to the weight of the evidence; that Mother's case was presented in a way that failed to safeguard the best interest of the children; and that a guardian or attorney *ad litem* should have been appointed to counteract the inequities in the quality of the parties' respective legal representation. Father responded by denying Mother's allegations and filing his own motion to alter or amend in which he requested that the court eliminate the provision of the parenting plan that enabled Mother to have the option of caring for the children during daytime hours when Father was not available. Father contended that Mother used her time with the children to "indoctrinate the children against [Father] and the Court's decision." He sought to restrict Mother's time with the children to every other weekend and one evening during the week. The trial court entered an order[2] on December 6, 2001, modifying the judgment of divorce by *agreement* of the parties, since at that point Mother and Father had started to cooperate with one another. The amended plan provided that, in consideration of Mother relinquishing her first option to care for the children and her agreement not to file "any collateral or direct action,"[3] Father released Mother from

---

[2]In its order, the trial court first indicated that Mother's motion to alter or amend should be denied. However, it was upon the agreement of the parties that the court proceeded to modify the judgment of divorce.

[3]The amended provision provides as follows:

> [Mother] will not file and agrees to be enjoined from filing any collateral or direct action, including but not limited to, any Rule 60 motions, any separate action alleging fraud in the presentation of [Father]'s facts, or any other action challenging the validity or correctness of the Final Judgment of Divorce and the incorporated Permanent Parenting Plan.

certain mortgages totaling nearly $40,000.[4]  At that time, the parties agreed that further litigation could harm the children.

On February 4, 2002, Mother filed a complaint to modify[5], which pleading forms the basis of the matters now before us.  The complaint was based upon allegations that there had been a "substantial and material change in the circumstances of the parties" requiring that the judgment of divorce be modified.  In particular, Mother alleged the following changed circumstances: that the children were exhibiting symptoms of illness that Mother believed to be associated with (1) their separation from her, and (2) Father's lack of parenting skills; that when the children's pediatrician suggested a counselor for Caroline, Father refused to allow Caroline to keep the appointment and, consequently, he had "done nothing to see to the children's mental health needs"; that Wesley, who turned 12 in May, 2001, should be permitted to express her preference as to the parent with whom she wished to live; that Wesley wanted to attend Girls' Preparatory School ("GPS"), but that Father would not give his permission; that Father "demonstrated an inability to care for the children properly," and that "they are being harmed by their present residential arrangement"; and that Mother is the more involved parent, yet her involvement is allegedly curtailed by her limited time with the children.  Mother proffered an amended parenting plan that provided, among other things, that Mother be designated as the primary residential custodian of both children; that Father pay Mother child support pursuant to the Child Support Guidelines; that the children have residential time with Father on alternate weekends; and that Wesley be permitted to attend GPS and that Father be required to pay for her tuition.  Father denied the allegations contained in the complaint to modify,

---

[4]On March 4, 2002, Hulett B. Siniard and Joyce H. Siniard, the paternal grandparents of the children, filed as intervenors a motion to set aside the order of December 6, 2001, on the grounds of fraud and misrepresentation by Mother.  In particular, the senior Siniards contended that it was actually they who forgave $40,000 in mortgages in order to avoid a lengthy appeal and enable Mother to finish college.  However, according to the senior Siniards, Mother had applied her saved funds toward the pursuit of this litigation.  Mother sought to dismiss their motion alleging that they did not have standing and that the motion failed to satisfy the criteria for a Rule 60 motion.  The trial court denied the grandparents' motion.

[5]Throughout the pendency of these proceedings, Mother filed several additional motions seeking to compel Father to take various actions pertaining to Caroline's medical and psychiatric care.  On February 18, 2002, Mother filed a motion to require psychological counseling for Caroline due to her anxiety.  Father responded on March 1, 2002, indicating that Caroline already had an appointment scheduled with Brenda Niel, one of the therapists to whom Caroline had been referred.  Consequently, the court ordered that Father ensure that Caroline see the therapist at the scheduled times for as long as was suggested by Ms. Niel.  On August 29, 2002, Mother filed a motion seeking authorization to take Caroline to see Dr. Mark Jennings, a psychiatrist recommended by Ms. Niel, and asking for permission to administer any medication he might prescribe.  By order of the court, entered September 9, 2002, it appears that the parties agreed that Mother would take Caroline to Dr. Jennings for treatment and would administer medications as deemed necessary.  Mother sought authorization from the court again on February 6, 2003, for Caroline to be treated by gastroenterologist Dr. David DeVoid, to whom Caroline had been referred for her stomach problems.  Father responded by seeking injunctive relief, arguing that Mother had

> usurped the medical decision-making [of Father] or alternatively, has undermined the medical decisions made by [Father].  As a consequence, the health of the children is being compromised by [Mother]'s inappropriate and unwarranted inter-meddling in the medical decisions made by [Father].

and raised as an affirmative defense that in the last order entered by the court, Mother had agreed not to challenge the current residential schedule, and that by receiving money in exchange for her right to further contest the court's custodial decision, Mother waived her right to challenge the court's judgment.[6]

By the time of the hearing,[7] the parties had agreed to follow the recommendation of Caroline's therapist, Brenda Niel, i.e., that the children would alternate residences on a weekly basis. Following the hearing on Mother's modification complaint, the trial court memorialized its judgment in an order entered May 22, 2003. In its written findings, the trial court ordered, based upon the evidence presented, that Father would remain the primary residential parent of Wesley, and that Wesley would continue to alternate residences on a weekly basis. However, the trial court designated Mother as the primary residential parent of Caroline. Consequently, Caroline would adhere to the same alternating schedule as Wesley except that following Mother's week, Caroline would remain with Mother from Sunday night through Wednesday after school. The only other modification made as to the parenting plan was that health care decisions relative to Caroline not covered by the provisions in the parenting plan would be made by Mother.

Following the trial court's May 22, 2003, order, which amended the residential schedule as to Caroline, Mother sought child support for Caroline by way of a motion to alter or amend the judgment. On July 3, 2003, the trial court granted Mother's motion. It ordered that child support be calculated for both children, and designated Mother as the primary residential parent of *both* Wesley and Caroline, although Father would retain primary decision-making authority for Wesley. Following a subsequent understanding of the parties, the trial court entered an order approving the parties' agreement[8], by the terms of which Father would pay child support to Mother retroactive to May 22, 2003, the date of the court's order modifying the residential plan, and decreeing that the costs of the case, not previously taxed by other orders of the court, are taxed to Father.

On appeal, Father challenges the trial court's modification of the residential schedule and designation of Mother as the primary residential parent of both children. Mother seeks her attorney's fees.

---

[6]Father also filed a motion for summary judgment, contending that by virtue of Mother's agreement to "not file . . . and be enjoined from filing any collateral or direct action, including . . . any other action challenging the validity or correctness of the Final Judgment of Divorce and the incorporated Permanent Parenting Plan," she relinquished her right to challenge the residential schedule. The court denied the summary judgment motion, finding that the language contained in the December 6, 2001, order did not preclude a petition for modification of the parenting plan and that to prevent such a motion when there had been a change in circumstances would be contrary to law.

[7]The trial judge who presided over the divorce hearing and the subsequent motion to alter or amend recused herself on November 5, 2002.

[8]The terms of this agreement are not challenged on this appeal.

II.

Courts generally favor existing custody arrangements. ***Taylor v. Taylor***, 849 S.W.2d 319, 328 (Tenn. 1993). Generally speaking, once custody is established and implemented, it is *res judicata* upon the facts existing at the time of the hearing. ***Steen v. Steen***, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001)(citing ***Hicks v. Hicks***, 176 S.W.2d 371 (Tenn. Ct. App. 1943)). However, despite this preference for continuing custody arrangements, courts have recognized that circumstances may change such that a modification of the existing custody arrangement may be warranted. ***Davis v. Davis***, No. M2003-02312-COA-R3-CV, 2004 WL 2296507, at *2 (Tenn. Ct. App. M.S., filed October 12, 2004). A parent seeking to modify a residential schedule must demonstrate, by a preponderance of the evidence, that there has been a "material change of circumstance affecting the child's best interest." Tenn. Code Ann. § 36-6-101(a)(2)(C) (2004).[9] There are no "bright line rules" for determining if the alleged change in circumstances is material. ***Davis***, 2004 WL 2296507, at *3 (citations omitted). However, as guidance in making these decisions, the Supreme Court has established a two-part test for determining whether or not the alleged changes, in fact, suffice to merit a change in the residential schedule. *See* ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002). First, the court must determine if a material change in circumstances has occurred by considering the following factors: (1) whether the change arose

---

[9]The current version of Tenn. Code Ann. § 36-6-101(a)(2)(C) provides as follows:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition which significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

While a different verison of this statute was in effect at the time of the hearing, the differences in the two versions are not material given the facts of this case. The earlier version of the statute provided as follows:

> If the issue before the court is a modification of the court's prior decree pertaining to custody or a residential parenting arrangement, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances which make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B)(Supp. 2003).

after the entry of the initial custody determination; (2) whether the change was unknown or not reasonably anticipated when the order was entered; and (3) whether the change "affects the child's well-being in a meaningful way." *Id.* (citing ***Blair v. Badenhope***, 77 S.W.3d 137, 150 (Tenn. 2002)). If the court decides that a material change in circumstances has occurred, it must then determine whether the modification is in the child's best interest. In conducting this inquiry, the trial court should rely upon the factors enumerated in Tenn. Code. Ann. § 36-6-106(a) (2001). *Id.* Those factors include the following:

> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . .
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
>
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a). It is incumbent upon the parent seeking a modification to demonstrate "both that the child's circumstances have changed materially and that the best interests of the child require a change in the existing custody arrangement." *Davis*, 2004 WL 2296507, at * 3 (citations omitted).

Our review of the trial court's findings of fact is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d); *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). Where the trial court makes no specific findings of fact, we must review the evidence and determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). Trial courts have broad discretion in developing and implementing custody and visitation arrangements that are suited to the specific facts of each case, as the trial court has the benefit of observing the parties' demeanor and assessing credibility in the proceedings below. *Davis*, 2004 WL 2296507, at *3 (citations omitted). Therefore, it is not the role of an appellate court to "tweak [these decisions] . . . in the hopes of achieving a more reasonable result than the trial court," but rather, such courts should only set aside the trial court's judgment when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

III.

A.

Father raises several issues on appeal relative to why the trial court's judgment designating Mother as the primary residential parent of the children was in error: (1) that, with respect to designating Mother as the primary residential parent of Caroline, there was no "substantial and material change of circumstance" warranting the court's initial modification of the residential schedule since, according to Father, the changes relied upon by Mother had previously been raised at trial; (2) that Brenda Niel, Caroline's therapist, should not have been permitted to testify, since she had served as a mediator in this case; (3) that the trial court should not have interviewed Caroline, who was nine at the time, since Ms. Niel had already indicated Caroline's custodial preference; and (4) that it was wrong to strip Father of his designation as primary residential parent of Wesley without articulating the court's justification for doing so. We address each contention in turn.

B.

In her complaint to modify, Mother proffered the following changed circumstances: that the children were exhibiting symptoms of illness which Mother believed to be associated with their separation from her and Father's lack of parenting skills; that when the children's pediatrician suggested a counselor for Caroline, Father refused to allow the child to keep the appointment and he has otherwise "done nothing to see to the children's mental health needs"; that Wesley, who turned 12 in May, 2001, should be permitted to express her custodial preference; that Wesley wanted

to attend GPS, but Father would not allow her to; that Father "demonstrated an inability to care for the children properly," and that "they are being harmed by their present residential arrangement;" and that Mother is the more involved parent, yet the efficacy of her involvement is adversely affected by her limited time with the children. Father contended that since, according to him, all of these alleged changes had been raised and litigated at the time of the divorce, they were not an appropriate basis for modifying the judgment of divorce.[10] In support of his argument, Father argues that the trial court's finding of a material change in circumstances is inconsistent with the Tennessee Supreme Court's decision in *Kendrick*, which held that the alleged change must have occurred *after* the order sought to be modified and must not have been known or reasonably anticipated at the time the contested order was entered. *Kendrick*, 90 S.W.3d at 570. In the instant case, Father argues there are no post-order facts that have been alleged. Certainly, Father's argument has *some* merit as evidenced by the trial court's statement that "[t]he primary issues relied upon by [Mother] as a basis for modification of the complaint were raised in the divorce case." However, the trial court found that a change in circumstances had occurred post-divorce judgment as evidenced by the following findings of that court:

> The Court finds that the modification of the schedule is in the best interest[] of Caroline and that the present Permanent Parenting Plan is no longer in the best interest[] of Caroline. Whereas, Wesley is dealing adequately with more frequent changes in her primary residence, Caroline is suffering ill effects. Brenda Neal [sic] has testified Caroline has expressed and displayed needs [sic] to spend more time with her Mother. The evidence has shown Caroline has a strong belief that her Father will not be flexible in the amount of time she may spend with her Mother; whereas, her Mother will be flexible in the amount of time Caroline may spend with her Father. The Court's finding the Mother is amenable to flexibility in the schedule to expand Caroline's time with her Father is a significant factor in the Court's decision to change the residential arrangement as it displays the Mother's interest in maintaining a strong relationship between Caroline and her Father and fostering that relationship. The Court also finds the conflict between the parents continues to be a significant factor detrimental to both children and feels the modification of the schedule in this regard will permit the parents to more adequately meet the needs of the children.

Father argues that this reasoning was not appropriate since it relies upon facts not alleged with specificity in Mother's complaint to modify. We cannot agree with Father's argument. Evidence that an existing residential schedule is not working can constitute a material change in circumstances,

---

[10]In his brief, Father also argues that Mother should not be rewarded for perpetuating this litigation, as the conflict was adversely affecting the children. However, this argument is not pertinent to our determination of whether or not the trial court applied the appropriate legal analysis.

as does evidence that the noncustodial parent's circumstances have improved since the original residential schedule was established. ***Rushing v. Rushing***, No. W2003-01413-COA-R3-CV, 2004 WL 2439309, at *6 (Tenn. Ct. App. W.S., filed October 27, 2004) (citations omitted). In the instant case, it appears that the trial court believed that the residential schedule was no longer working for Caroline for the reasons stated by the trial court. The lower court also noted in its opinion that Mother's adulterous relationship, which was cited by the trial court following the divorce proceedings in support of its decision to designate Father as the primary residential parent, was no longer an existing fact and hence no longer a factor adversely impacting Mother's ability to serve as a custodian. Under ***Kendrick*** and its progeny, there is sufficient evidence of a material change in circumstances. Accordingly, we find that the evidence does not preponderate against the trial court's order challenged on this appeal.

We must defer to the trial court's assessment of the parties' credibility. ***See Adelsperger v. Adelsperger***, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). The trial court noted that there were several conflicts in the testimony presented by the parties. The court observed that these conflicts appeared to be "a result more of different perceptions than different realities," citing, for example, the fact that where Mother is more receptive to emotional communication from the children, Father "perceives her response to the children as over-emotional and hysterical." The trial court determined that Father's reaction to Mother was "interfering with his ability to accurately interpret communications of emotional need from the children." The court expressly found Mother's credibility to be greater than that of Father's. The trial court's assessment of the witnesses, coupled with evidence presented through testimony relating to the parties' interactions and Caroline's physical ailments, demonstrate that the evidence does not preponderate against the trial court's judgment that Mother should be designated as the primary residential parent of Caroline.

Father contends that the only new evidence from which the trial court found a change in circumstances stems from Caroline's testimony. As Father argues, "[i]n light of the impression-ability of a nine year old, this consideration should not have been sufficient to trump the need to end the years of litigation between the parties."

The expressed preference of a child, standing alone, is insufficient to establish a change in circumstances, since it is only after the court has determined that there has been a material change in circumstances that the court is authorized to consider the preference of a child as a part of the best interest analysis. ***See Mulkey v. Mulkey***, No. E2004-00590-COA-R3-CV, 2004 WL 2412610, at *5 (Tenn. Ct. App. E.S., filed October 28, 2004). However, the reasons *underlying* the child's preference may constitute a change in circumstances. *See **id.*** A court may listen to the preference of a child under 12, although the statute instructs that greater weight be given to the testimony of a child who is 12 or older over one who is younger. *See* Tenn. Code Ann. § 36-6-106(a)(7). In the instant case, the testimony showed, and the trial court found, that Caroline wanted to live with Mother because of Father's inflexibility in permitting her to see Mother during Father's designated residential time. As the court appears to have linked Caroline's anxiety to this issue, it is relevant to the change in circumstances analysis.

The court did not state with specificity its findings relative to the best interest of the child analysis, but it is clear that it contemplated the statutory factors set forth in Tenn. Code Ann. § 36-6-106(a). The "willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent," Tenn. Code Ann. § 36-6-106(a)(10), is obviously relevant in this case. This factor was significant to the trial court's decision as evidenced by its statement that "[t]he Court's finding the Mother is amenable to flexibility in the schedule to expand Caroline's time with her Father is a significant factor in the Court's decision to change the residential arrangement as it displays the Mother's interest in maintaining a strong relationship between Caroline and her Father and fostering that relationship." Although, generally speaking, it should not be the only factor that a court employs in its analysis, *see Harris v. Harris*, 832 S.W.2d 352, 354 (Tenn. Ct. App. 1992), a child's expressed preference as to which parent he or she prefers to live with is certainly relevant to the court's determination. Tenn. Code. Ann § 36-6-106(a)(7).

C.

Father's second issue on appeal is that the trial court erred in permitting Brenda Niel to testify about the needs of the children. Ms. Niel is the "play therapist" who Caroline saw on a weekly basis. Ms. Niel testified regarding Caroline's issues and the progress she had made. At the request of Caroline, the therapist testified as to the child's custodial preference.[11] Father concedes that, generally speaking, it would have been appropriate for Ms. Niel to testify in her capacity as Caroline's counselor. However, Father contends that since Ms. Neil acted as an agreed-upon mediator[12] for the parties, she should not have testified in this case. Father concludes from all of this that Ms. Niel's role as mediator disqualified her from testifying. The trial court allowed Ms. Niel to testify, but precluded her from testifying about anything that transpired in the mediation sessions. Father now contends that this was error because, although Ms. Niel is not certified as a Rule 31 mediator, the same confidentiality restrictions should apply. He contends that she should not have been permitted to testify as to events that occurred *after* the mediation sessions.

Although Ms. Niel is not certified as a Rule 31 mediator and mediation was not court-ordered, Father seeks to invoke the confidentiality restrictions placed upon mediators by Supreme Court Rule 31. That rule provides that Rule 31 neutrals must "[p]reserve and maintain the confidentiality of all information obtained during Rule 31 ADR Proceedings and shall not divulge information obtained by them during the course of Rule 31 ADR Proceedings without the consent of the parties, except as otherwise may be required by law." Tenn. Sup. Ct. R. 31, § 10(d). Even if Ms. Niel had been a Rule 31 certified mediator, we do not find that the trial court erred by

---

[11]Ms. Niel testified that Caroline had asked her to convey to the trial court Caroline's preference that she spend more time with Mother. Ms. Niel explained that Caroline was concerned about making her Father angry by expressing such a desire, and, consequently, she wanted Ms. Niel to convey this information for her.

[12]The record reflects that counsel for the parties were present for at least one of the mediation sessions and that other sessions concerned financial issues.

permitting her to testify. At the commencement of her testimony, Ms. Niel was instructed to confine her testimony to her counseling sessions with Caroline. Father did not raise an objection to these instructions. Furthermore, he did not object during her testimony or otherwise indicate that her testimony implicated the subject matter of the parties' mediation sessions. Therefore, we hold the court did not err in allowing Ms. Niel to testify. Although Supreme Court Rule 31 makes clear that a mediator may not testify as to events that occurred during the mediation sessions, this mandate is not implicated since Ms. Niel successfully limited her testimony to her counseling sessions with Caroline. This issue is found adverse to Father.

D.

Father also challenges the trial court's decision to interview Caroline who, at the time, was age nine. He contends that the decision to interview her was in error because Ms. Niel had already conveyed Caroline's preference on the child's behalf. He complains that the interview only provided the child an opportunity to make statements to the court that Father characterizes as being favorable to Mother and adverse to him. In support of his argument, Father directs us to the standard of review articulated by the Tennessee Supreme Court in *Eldridge v. Eldridge*, 42 S.W.3d at 85. Although the court in *Eldridge* bestowed broad discretion on the trial court in fashioning custody arrangements, Father contends that a court is also directed to remedy any injustice.

The *Eldridge* court held that an appellate court is authorized to reverse a trial court's decision where the court "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an *injustice* to the party complaining." *Id.* at 85 (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)) (emphasis added). We do not find that the circumstances before us present such an injustice. Despite Father's contention that "the trial courts should be loathe to interview children unless an interview is critical to the outcome of the case," we find that the trial court acted well within its discretion when it interviewed Caroline. As discussed above, Tenn. Code Ann. § 36-6-106(a)(7) provides that, in making its determination as to what is in the best interest of the child, a trial court "*may* hear the preference of a younger child upon request." Tenn. Code Ann. § 36-6-106(a)(7) (emphasis added). Although it is not proper for a court to rely solely upon the expressed preference of a child, it is certainly one factor to consider. *See Harris*, 832 S.W.2d at 354. As we have determined that the trial court predicated its judgment primarily on its finding that Caroline was troubled by her Father's inflexibility in allowing her to see Mother, and not simply Caroline's expression that she wished to spend more time with Mother, we cannot say that the trial court abused its discretion.

E.

Lastly, Father contests the trial court's July 3, 2003, order in which it designated Mother as the primary residential parent of both Wesley and Caroline, and awarded child support to Mother. The order entered May 22, 2003, which addressed the complaint to modify, ordered that Mother be designated the primary residential parent of Caroline, and that Father would remain the primary

residential parent of Wesley. However, in its order entered on July 3, 2003, in response to Mother's motion seeking child support, the trial court altered the designation as follows:

> The calculation of support and the appropriate deviations in this case are complicated by the fact that one child spends equal amounts of time with each parent; whereas, the other child spends in excess of the Child Support Guidelines' assumed average days, but not equal times with each parent. The motion to alter or amend is sustained in that [Mother] is designated the primary residential parent for both children, but [Father] shall retain primary decision-making authority for Wesley.

Father argues that the trial court abused its discretion in decreeing as set forth above without articulating any facts to support such a decree. Father contends that if the facts warranted such a change, these facts should have been included in the order. Mother responds by arguing that in making this determination, the trial court "obviously felt that there needed to be a consistent decision-maker to address the issues that might arise relating to important decisions for the children." Although we do not find the trial court's decision to be in error, our decision is not based upon the reasons proffered by Mother.

In its order, the trial court described how the child support would be calculated since the parents have equal parenting time with Wesley. The trial court cited *Calhoun v. Calhoun*, No. E2001-01242-COA-R3-CV, 2002 WL 554471 (Tenn. Ct. App. E.S., filed April 15, 2002), in support of its order that "[t]he difference between the child support obligations for Wesley of each parent shall be calculated and divided in half to determine the amount of child support owed by [Father] to [Mother] for Wesley." In *Calhoun*, the parties shared equal parenting time, but the court designated the mother as the primary residential parent. *Id.*, at *1. The court noted that although a "primary residential parent" is defined as "the parent with whom the child resides more than fifty percent [] of the time," Tenn. Code Ann. § 36-6-402(4) (2001), the trial court may only award child support to the parent designated as the primary residential parent. *See Gray v. Gray*, 78 S.W.3d 881, 884 (Tenn. 2002). Similarly, the situation created by Wesley's residential arrangement does not fit under the rubric of the statutory definition of a primary residential parent since she spends fifty percent of her time with each parent. Therefore, since a parent must be designated in order to receive child support, it appears to us that the trial court designated Mother as the primary residential parent of Wesley so the court could order support for Wesley as well as Caroline. The Supreme Court has recently addressed an analogous situation and remanded a matter where support had been awarded in the case of an equal residential schedule because the trial court neglected to designate one parent as the "primary residential parent." *See Hopkins v. Hopkins*, No. M2002-02233-SC-R11-CV, 2004 WL 2151200, at *3 (Tenn., filed September 27, 2004). While the trial court in the instant case did not state with specificity its reasons for designating Mother as the primary residential parent of Wesley, we find no error in this omission. In any event, we cannot say that the evidence preponderates against the trial court's decision to designate Mother as the primary residential parent of both children.

IV.

Mother asks us to remand this matter to the trial court for a determination of whether or not she should recover the attorney's fees incurred by her responding to Father's appeal. Exercising our discretion, we find that an award of attorney's fees in this case is not appropriate.

V.

The judgment of the trial court is affirmed.[13] Costs on appeal are taxed to the appellant, Mark Alan Siniard. This case is remanded to the trial court for enforcement of that court's judgment and for collection of costs assessed below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[13]On June 4, 2004, Father filed a motion to stay or enjoin further trial court proceedings that were filed in the trial court pending this court's decision on the matter before us. This issue is now moot.