# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 12, 2015 Session

## JOSHUA TIMOTHY CANADA v. TONYA MARIE CANADA

**Appeal from the Chancery Court for Dyer County**
**No. 12CV194     Tony Childress, Chancellor**

_____

**No. W2014-02005-COA-R3-CV – Filed September 4, 2015**
_____

This post-divorce appeal arises from the trial court's denial of Father's petition to modify custody. Following a one-day trial, the court found that Father failed to demonstrate a sufficient material change in circumstances and denied his petition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Thomas E. Weakley, Dyersburg, Tennessee, for the appellant, Joshua Timothy Canada.

Jason R. Creasy, Dyersburg, Tennessee, for the appellee, Tonya Marie Canada.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Prior to their divorce in October 2012, Petitioner/Appellant Joshua Timothy Canada ("Father") and Respondent/Appellee Tonya Marie Canada ("Mother") had two children together, a daughter, born in 2000, and a son, born in 2004. At the time of the divorce, the parties were living in Dyer County, and both children attended public schools there. Along with the parties' divorce decree, the trial court entered an agreed permanent parenting plan that granted equal parenting time to each parent on an alternating week-to-week basis but designated Mother the primary residential parent of both children.

The parties adhered to the parenting arrangement set forth in the original permanent parenting plan until approximately April 2014. Around that time, the relationship between Mother and Daughter became strained, and the parties agreed to let Daughter stay exclusively with Father for an extended period of time. In June 2014, while Daughter was staying exclusively with Father, Father filed a petition for modification of custody in which he alleged that a material change of circumstances had occurred such that it was in the best interest of both children that Father be designated their primary residential parent. Along with the petition, Father submitted a proposed permanent parenting plan that designated him the children's primary residential parent and granted Mother parenting time on alternating weekends and on specified holidays and school vacations. Mother filed a response to Father's petition for modification of custody, asserting that no material change of circumstances had taken place and requesting that the trial court dismiss Father's petition. On August 27, 2014, the trial court held an evidentiary hearing at which Father, Mother, and Daughter each testified.

During the hearing, Father testified that he had remarried and moved in with his current wife and her three children in Milan Tennessee, approximately forty-five miles from Mother's home. Father testified that two of his current wife's children are in high school and live with them full-time; the other is in college and lives in a dorm during the school year. Father testified that he was working full-time for Ceco Door in Milan. Mother testified that she has continued living in the parties' former marital residence in Dyer County. Mother testified that she was working part-time as a tutor at Dyersburg State Community College and pursuing a master's degree in social work, which she planned to complete by May 2015. Both Mother and Father testified that following their divorce, they had exchanged the children on an alternating weekly basis but had also worked to accommodate each other's schedules as necessary.

Father testified that the children were never left alone while they were in his care and expressed concern that the children were left alone at times in Mother's care. Father testified that, on days when they rode the bus to Mother's house from school, there was a period of time when they were at home alone. Daughter testified that on one occasion when she was at Mother's house alone, she saw a car parked in front of the house, and she became very scared and hid in her closet crying until Mother arrived home. Father indicated that he was concerned about the impact that and other experiences might have on the children. Father stated that he discussed his concerns with Mother and did "[n]ot entirely" agree with her opinion that the children were old enough to stay at home alone. Father also testified that he knew of several occasions in which the children had been locked out of Mother's house after riding the bus home from school. Daughter acknowledged in her testimony, however, that she had forgotten her key on those occasions and indicated that Son could still get into the house through a side door.

2

The parties testified that Daughter generally performed well in school, though Son struggled at times. They acknowledged that for a while, Son had been successful in misleading them about whether he had completed his homework each night. However, they testified that once Son's struggles in school became apparent, Father spoke to him about the importance of taking his schoolwork more seriously. Father testified that since that time, he has gone through Son's backpack after school to find his homework and make sure he gets it done. Father testified that although Mother also recognizes the importance of the children's education, he had concerns about Son's homework getting done while he was in her care. To support his concern, Father testified that in the week prior to trial, while Son was staying with his Mother, he received a grade of 45 on a homework assignment.

The parties testified regarding an instance in which Son walked home by himself after Mother dropped him off alone at a public swimming pool near her house. According to Mother's testimony, she dropped Son off to meet a friend and his father at the pool and told him she would be back around 5:00 p.m. Mother testified that she thought Son knew her cell phone number and could call her if he needed her before that time. Apparently, Son either did not know or had forgotten Mother's cell phone number. At some point prior to the time Mother was supposed to return, Son decided he wanted to leave the pool and called Mother's house. When Mother did not answer, he left the pool and walked to Mother's house alone. Father testified that after Daughter, who was staying with him at the time, received a phone call from a friend telling her that Son left the pool, he started calling Mother's cellular and home phones repeatedly. Father testified that Son eventually answered Mother's home phone and was crying because he was scared. Father expressed concerns about Son's safety walking through Mother's neighborhood alone, though he agreed that the neighborhood was safe.

During her testimony, Daughter stated that she would prefer to live with Father. Daughter testified that she enjoys staying with Father and gets along well with Father's wife and stepchildren. She testified that she has made many friends in Milan during her time with Father and has even tried out for, and made, the high school volleyball team there. Daughter testified that when she returned to Mother's house in June 2014 following her extended stay with Father, Mother had made changes to her bedroom that led her to believe Mother planned to convert the room for some other use. Daughter testified that seeing the changes to her room made her feel unloved. Daughter also testified that she thinks Mother favors Son over her because Mother gets mad at her more than she does at Son. Mother denied that she favors either of the children. Though Mother acknowledged that she and Daughter have a tendency to "butt heads," she testified that it was because they are so much alike. Mother further explained that to the extent that she treats the children differently, it is because she has higher expectations for Daughter as the older of the two.

3

Mother and Daughter also both testified concerning the incident that precipitated Daughter's request to spend more time with Father in April 2014. Daughter testified that the incident started when she was in a rush to go to the bathroom one day after school. When she got off the school bus and arrived at Mother's house, Daughter realized she had forgotten her key and sent Son to go into the house through the side door. While she waited for Son to let her in, Daughter started knocking on the door. Mother happened to be home at the time and tried to open the door. After hearing Mother unlock the door, Daughter tried to push her way into the house but was unsuccessful because Mother had not unlatched the chain lock. Daughter testified that Mother started yelling at her to quit pushing on the door so that she could unlatch the chain and that she did stop pushing, but pleaded with Mother to hurry. Daughter testified that once they got the door open, Mother was very angry and she grabbed Daughter and slung her, nearly causing her to fall down as she ran to the bathroom. Mother acknowledged that she may have grabbed Daughter out of frustration, but testified that she did so because she did not realize Daughter had to use the bathroom and thought she was just acting foolish. Shortly after the incident, Daughter asked to stay with Father.

On September 3, 2014, the trial court entered detailed findings of fact and conclusions of law. The trial court considered the logistical difficulties Mother's work and school schedules presented. The court noted that, on occasion, Mother had been late picking up the children from after-school activities. The court also noted that the children stayed alone at Mother's house after school and, on some occasions, had been locked out because Daughter forgot her key. The court concluded that although such behavior could constitute a material change of circumstances, none of those instances appeared to impact the children's well-being in any meaningful way. The court expressed concern regarding the incident in which Son walked home alone from a public swimming pool, but noted that he left the pool on his own accord prior to the time Mother was supposed to pick him up. Finally, the court noted the extended period Daughter stayed with Father following her disagreement with Mother. The court considered each of the foregoing facts collectively, along with Daughter's preference to live with Father and the fact that Father had remarried and moved, but concluded that Father failed to demonstrate a material change of circumstances had occurred since entry of the initial custody order. As such, the court stated that it would deny Father's petition to modify the parties' permanent parenting plan.

Despite stating that Father failed to prove a material change of circumstances and that his petition should be dismissed, the trial court proceeded to analyze whether a modification of custody would have been in the children's best interest if such a change had been established. The court stated that:

> [Mother] relied heavily on [Father] and his extended family to help her with the children, and this help might not be as readily available as it has been now

4

that [Father] has moved forty-five miles from the place where he once lived. The Court would have concluded that it was in the children's best interest to name [Father] primary residential parent if a . . . material change of circumstance had been proven in this case.

Additionally, the court attached an unsigned permanent parenting plan that it would have entered if a material change of circumstances had taken place. The unsigned plan designated Father the primary residential parent of both children and granted Mother 141 annual days of parenting time on alternating weekends and during certain school holidays. On September 11, 2014, the trial court entered an order denying Father's petition for modification of custody and incorporating its earlier written findings of fact and conclusions of law. Father timely filed a notice of appeal.

## ISSUES PRESENTED

Father raises a single issue on appeal, which we have restated slightly:

1.      Whether the evidence presented preponderates against the trial court's finding that no material change of circumstances occurred in light of the trial court's subsequent statement that, if a material change of circumstances had occurred, it would have been in the children's best interest to designate Father their primary residential parent.

## STANDARD OF REVIEW

In *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013), the Tennessee Supreme Court set out the standards that apply to appellate review of a trial court's resolution of a petition to modify an existing permanent parenting plan:

In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick,* 90 S.W.3d at 569. Statutory interpretation is a question of law, which we review de novo. *Mills v. Fulmarque,* 360 S.W.3d 362, 366 (Tenn. 2012).

A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.,* 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.,* 173 S.W.3d at 732; *Kendrick,* 90 S.W.3d at 570; *Hass,* 676 S.W.2d at 555.

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley,* 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit,* 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey–Holt v. Holt,* 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles,* 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge,* 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge,* 42 S.W.3d at 88.

*Armbrister*, 414 S.W.3d at 692-93.

## ANALYSIS

At the time of a divorce involving at least one minor child, the trial court must make an initial custody determination "on the basis of the best interests of the child." *See* Tenn. Code Ann. § 36-6-106(a) (2014) (outlining the factors courts should consider when taking into account a child's best interest). Once the court has made an initial determination of custody, it is generally reluctant to change that determination unless it is clear that such a

modification is necessary. *See Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006) ("Because children are more likely to thrive in a stable environment, the courts favor existing custody arrangements."). When a parent files a petition to modify custody, the parent seeking the modification must demonstrate "that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Thus, the decision to modify custody is a two-part test. As a threshold issue, the trial court must determine whether there has been a material change in circumstances *since* the initial (or previous) custody determination. *In re M.J.H.*, 196 S.W.3d 731, 744 (Tenn. Ct. App. 2005). If the court finds that a material change in circumstances *has* occurred, the court must proceed to the second step of the analysis to determine whether the modification sought is in the child's best interest.[1] *In re M.J.H.*, 196 S.W.3d at 744. If the court finds that a material change in circumstances *has not* occurred, it "is not required to make a best interests determination and must deny the request for a change of custody." *Pippin v. Pippin*, 277 S.W.3d 398, 405 (Tenn. Ct. App. 2008) (quoting *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999)).

Tennessee Code Annotated section 36-6-101(a)(2)(B) sets forth the standard a petitioning parent must meet to prove a material change in circumstance sufficient for consideration of whether custody modification is in the best interest of the child:[2]

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

---

[1] In determining whether modification is in the child's best interest, the trial court should order a custody arrangement that permits both parents to enjoy the maximum participation possible in the child's life consistent with the factors enumerated in Tennessee Code Annotated section 36-6-106(a)(1)-(15), as well as the location of the parents' residences, the child's need for stability, and all other relevant factors. Tenn. Code Ann. § 36-6-101(a).

[2] A different standard applies when a parent seeks modification of a residential schedule but not the designation of primary residential parent. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C). It is "easier to establish that a material change in circumstances has occurred" when the parent only seeks to modify the residential parenting schedule. *Armbrister*, 414 S.W.3d at 703.

*See also Armbrister*, 414 S.W.3d at 698-703 (explaining the purpose and historical development of the material changes concept). Although there are no bright-line rules for determining whether such a change has occurred, there are several relevant considerations: (1) whether the change occurred after the entry of the order sought to be modified; (2) whether the change was not known or reasonably anticipated when the order was entered; and (3) whether the change is one that affects the child's well-being in a meaningful way. *H.A.S. v. H.D.S.*, 414 S.W.3d 115, 123 (Tenn. Ct. App. 2013) (quoting *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)).

Applying the analysis outlined above to the present case, we are not persuaded that the evidence preponderates against the trial court's finding that Father failed to prove a material change of circumstances sufficient to modify custody. Father failed to demonstrate that Mother's decision to let the children stay at home alone in the afternoons has impacted them in any meaningful way. Additionally, despite Father's contention to the contrary, the record does not reflect that the trial court failed to appreciate the significance of the rift between Mother and Daughter. The parties testified that Mother and Daughter have, at times, a strained relationship, but agreed that they love each other and attributed their tendency to "butt heads" to the fact that they are so much alike. The April 2014 disagreement between Mother and Daughter and Daughter's subsequent extended stay with Father is not evidence of a material change of circumstances. Likewise, Daughter's testimony that she would prefer to live with Father is not sufficient alone to constitute a material change of circumstances. *See Hoalcraft v. Smithson*, 19 S.W.3d 822, 829-30 (Tenn. Ct. App. 1999) (finding that the children's preferences alone were not sufficient proof of circumstances to warrant a change in custody). Additionally, Father failed to present sufficient evidence regarding Mother's alleged role in Son's academic struggles. Father acknowledged that Son succeeded for a time in misleading both parents about his homework. While it appears that Mother has remained more trusting of Son regarding his homework than Father has since the academic struggles became apparent, both parties testified that they help him with his schoolwork and even go through his backpack occasionally to make sure he has done all of it. Father's testimony that Son failed a homework assignment while in Mother's care falls far short of establishing a sufficient material change of circumstances.

Father contends that by finding that designating Father the children's primary residential parent would serve their best interests, the trial court, in effect, found that a material change of circumstances had occurred. In support of his argument, Father relies on the language of Section 36-6-101(a)(2)(B) that a material change of circumstance may include "circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B). Father's argument is premised on an interpretation of Section 36-6-101(a)(2)(B) that would allow petitioning parents to prove a material change of circumstances by establishing that modification is in the child's best

interest. This interpretation of the statute, however, would nullify the material change of circumstances prong of the two-part test to modify custody. Although, meeting the best interests of the child is an overarching concern in allocating parental responsibilities following a divorce, *see Kelly v. Kelly*, 445 S.W.3d 685, 696 (Tenn. 2014), the material change of circumstances requirement serves an important purpose. The concept of requiring a parent seeking modification to prove a material change in circumstances originated out of this Court's recognition that existing parenting orders are considered *res judicata* on the facts as they existed at the time that the most recent order was entered. *Armbrister*, 414 S.W.3d at 698-99 (citing *Hicks v. Hicks*, 176 S.W.2d 371, 375 (Tenn. Ct. App. 1943)). In that regard, the requirement "promotes finality, 'prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits.'" *Id*. at 698 n.15 (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012). It would be a great inconvenience to the litigants, the courts, and the public, if either party, as often as he or she chose, could re-litigate questions of custody or support on the same or substantially similar facts. *Id*. at 699. Additionally, the requirement serves the courts' interests in preserving stable custodial relationships for the child and discouraging divorced parents from using the child as a pawn in their ongoing conflicts through repeated petitions to modify custody.[3] *See Aaby v. Strange*, 924 S.W.2d 623, 627 (Tenn. 1996) ("[It is] the collective wisdom of both the courts and child psychologists that children, especially those subjected to the trauma of divorce, need stability and continuity in relationships most of all." (quoting *Taylor v. Taylor*, 849 S.W.2d 319, 328 (Tenn. 1993))). As such, we reject Father's argument. The decision to modify custody is a two-part test, and a petitioning parent must prove each part separately before a prior custody determination may be modified. Accordingly, we conclude that because Father failed to prove a material change of circumstances in this case, the trial court correctly denied his petition to modify.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of Father's petition to modify custody. The costs of this appeal are assessed to the appellant, Joshua Timothy Canada, and his surety, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

---

[3] For example, if decisions to modify custody were based solely on meeting the child's best interests without regard for whether a material change of circumstances had occurred, parents could force modification of their custody arrangement as often as the child's custodial preference changed in a case where the other best interest factors weighed equally in favor of each parent. The requirement that petitioning parents demonstrate a material change of circumstances prevents such a scenario.